2000 UT 77

**In the Matter of the DISCIPLINE OF Gary W. PENDLETON, No. 2564.**

No. 990317.

Supreme Court of Utah.

Sept. 26, 2000.

Gary W. Pendleton, Ivins, pro se.

Billy L. Walker, Charles A. Gruber, Kate A. Toomey, Salt Lake City, Office of Professional Conduct of the Utah State Bar.

RUSSON, Associate Chief Justice:

¶ 1 Gary Pendleton appeals from the district court's judgment disbarring him for misconduct involving his possession, use, procurement, and distribution of methamphetamine. We affirm.

## BACKGROUND

¶ 2 Pendleton was licensed to practice law in the state of Utah and was engaged full time in the practice of law in Washington County, Utah, when criminal charges were filed against him. On April 28, 1997, he was charged in Fifth District Court with criminal solicitation to deliver a controlled substance, distribution of a controlled substance (two counts), and possession or use of a controlled substance. In December 1997, a jury trial,

presided over by District Judge David E. Roth, was held in the criminal court[1] at which the State presented evidence of Pendleton's alleged involvement with methamphetamine, a controlled substance. The jury returned a verdict of guilty on the charge of possession or use of a controlled substance, a third degree felony in violation of Utah Code Ann. § 58–37–8(2)(a)(i),[2] and on March 16, 1998, the criminal court entered its judgment of conviction of this offense. The criminal court sentenced Pendleton to a five-year prison term but stayed the sentence and placed Pendleton on thirty-six months' probation.

¶ 3 On July 2, 1997, after the criminal charges had been filed against Pendleton but before he was ultimately convicted, the Utah State Bar's Office of Professional Conduct (the "OPC") commenced a separate disciplinary proceeding against Pendleton by filing a petition for the interim suspension of Pendleton in the Fifth District Court. The OPC filed its petition pursuant to rule 18 of the Rules of Lawyer Discipline and Disability ("RLDD"), which permits the OPC to seek interim suspension of a lawyer who poses a substantial threat of irreparable harm to the public, pending a final determination of whether permanent discipline is necessary. The OPC alleged in its petition that Pendleton (1) possessed and used methamphetamine, (2) solicited one of his clients, Donald Mills, to distribute methamphetamine to him, (3) purchased large amounts of methamphetamine from Mills, (4) requested methamphetamine from Mills's wife, Shannon Mills, in exchange for legal services, and (5) accepted methamphetamine in exchange for legal services provided to another client, Robert Hernandez. The OPC contended that in light of these acts, Pendleton's continued practice of law posed a substantial threat of irreparable harm to the public. The presiding judge of the Fifth District Court assigned Senior Judge Boyd Bunnell to preside over the

1. To avoid confusion, the district court in which Pendleton's criminal trial took place shall be referred to in this opinion as the "criminal court" and the district court in which the disciplinary proceeding took place shall be referred to as the "disciplinary court."

2. The other three charges were dismissed before the matter was submitted to the jury for determination.

OPC's disciplinary proceeding against Pendleton.

¶ 4 On January 10, 1998, a hearing was held before Judge Bunnell on the OPC's petition for interim suspension. In an order entered January 20, 1998, the disciplinary court granted the OPC's petition and ordered that Pendleton be suspended from the practice of law pending final disposition of the disciplinary proceeding against him. On February 19, 1998, Pendleton filed a notice of appeal of the interim suspension order.

¶ 5 On March 3, 1998, the OPC filed a formal complaint in the disciplinary court pursuant to rule 18 of the RLDD, which provides that once an interim suspension order is entered, the OPC is entitled to file a formal complaint seeking permanent discipline. In addition to listing the allegations set forth in the OPC's rule 18 petition for interim suspension, the formal complaint listed additional allegations of misconduct that had arisen since the petition was filed, including allegations that Pendleton (1) distributed methamphetamine to Marlene Meyers, a client, and smoked methamphetamine with her in his office, (2) failed to wind up his law practice, as required by rule 26 of the RLDD and the disciplinary court's interim suspension order, (3) engaged in the unauthorized practice of law while on an administrative suspension for failure to pay his annual licensing fee, (4) improperly used his client trust account, and (5) was convicted of possession or use of methamphetamine. The OPC requested in its formal complaint that Pendleton be disbarred for his alleged misconduct.

¶ 6 On April 1, 1998, Pendleton filed a notice of change of judge as a matter of right pursuant to rule 11 of the RLDD, which entitles a lawyer subject to discipline to a change of judge as of right when the lawyer files a notice within thirty days after the action is commenced against the lawyer. The OPC opposed Pendleton's notice, contending that the notice was untimely. Senior Judge Douglas L. Cornaby was assigned to rule on the notice of change of judge, since the judges of the Fifth District recused themselves.

¶ 7 On June 2, 1998, a hearing was held before Judge Cornaby on Pendleton's notice of change of judge. The OPC contended that Pendleton's notice was untimely because it was not filed within thirty days after the action had commenced, as required by rule 11 and this action "commenced" when the motion for interim suspension was filed on July 2, 1997—several months before Pendleton requested a change of judge. Pendleton argued, however, that the notice was timely because the action against him did not "commence" for purposes of rule 11 until the OPC filed its formal complaint on March 3, 1998, and thus, the notice of change of judge was timely filed on April 1, 1998. Judge Cornaby ruled that Pendleton's notice of change of judge was untimely and thus denied the notice. Judge Bunnell then continued to preside over the ongoing disciplinary proceeding against Pendleton.

¶ 8 During this time, we granted Pendleton's interlocutory appeal of the rule 18 interim suspension order and concluded on April 20, 1998, that while Pendleton's conduct constituted grounds for discipline, his conduct was insufficient to justify interim suspension under rule 18. We therefore stayed the rule 18 interim suspension order pending final resolution of the proceeding against Pendleton in the disciplinary court. We added, however, that the OPC was entitled to move for interim suspension under rule 19 of the RLDD.

¶ 9 On April 24, 1998, after we decided Pendleton's appeal from the rule 18 interim suspension order, the OPC filed with the disciplinary court a second motion for interim suspension. This time the OPC sought the interim suspension of Pendleton under rule 19 of the RLDD, which enables the OPC to seek interim suspension "[u]pon being advised that a lawyer has been convicted of a crime which reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." At this point, Pendleton's conviction had been entered for possession or use of a controlled substance. Pendleton opposed the rule 19 motion for interim suspension, arguing, in part, that a conviction of possession or use of a controlled substance does not warrant interim suspen-

sion. On July 6, 1998, the disciplinary court ultimately granted the OPC's rule 19 motion for interim suspension, again suspending Pendleton from the practice of law pending the final outcome of the disciplinary proceeding.

¶ 10 On May 1, 1998, the OPC served upon Pendleton a set of interrogatories, a request for admissions, and a request for production of documents. On June 5, 1998, Pendleton moved for a protective order seeking relief from the OPC's requested discovery. Pendleton contended that the OPC's requests were not reasonably calculated to lead to the discovery of admissible evidence and that the requested discovery involved "impermissible inquisition." The OPC objected to Pendleton's motion for a protective order by filing both a motion to strike Pendleton's motion and a memorandum in opposition to Pendleton's motion. The OPC argued that Pendleton's motion was untimely, unsigned, and lacking an accompanying memorandum of points and authorities, and should therefore be stricken. Moreover, the OPC contended that its discovery requests were reasonable and sought relevant evidence. On June 22, 1998, Pendleton filed an amended motion for a protective order, accompanied by a forty-five-page memorandum of points and authorities. In his memorandum, Pendleton argued that the district court lacked jurisdiction over this case during the pendency of Pendleton's earlier appeal and, thus, Pendleton had no duty to respond to the OPC's discovery requests, which were filed during the pendency of the appeal. The disciplinary court denied Pendleton's motion, stating:

> Respondent's motion is so general that it in effect is asking the Court to deny the Bar its rights of discovery in preparing for the disbarment proceeding. For the Court to enter such a general and all-inclusive protective order would thus deny the Bar its discovery rights as set forth in the Rules of Civil Procedure.

The court did not address the jurisdictional issue raised by Pendleton.

¶ 11 After the disciplinary court denied Pendleton's motion for a protective order, Pendleton still did not respond to the OPC's interrogatories, request for production of documents, or request for admissions. Therefore, on September 4, 1998, the OPC filed a motion to compel responses to the interrogatories and request for production of documents. As for the request for admissions, the OPC alleged that the matters therein were deemed admitted because Pendleton failed to respond thereto within thirty days as required by rule 36 of the Utah Rules of Civil Procedure.[3]

¶ 12 On September 15, 1998, the disciplinary court ruled that the matters set forth in the OPC's request for admissions were, indeed, deemed admitted by default. In addition, the court ordered Pendleton to respond to the OPC's interrogatories and request for production of documents before September 18, 1998.

¶ 13 On September 18, 1998, Pendleton finally filed a response to the OPC's interrogatories and request for production of documents, but included admissions and denials of the matters set forth in the OPC's request for admissions. The OPC filed a motion objecting to Pendleton's late responses to the request for admissions and requested that his responses be stricken because the matters had already been deemed admitted. In response, Pendleton moved for relief from his default admissions. The disciplinary court ultimately ruled that Pendleton was not entitled to relief from his default admissions, and the same were deemed admitted.

¶ 14 Meanwhile, the OPC sought partial summary judgment as to Pendleton's alleged violations of rule 8.4(d) of the Rules of Professional Conduct. In a motion filed on September 4, 1998, the OPC argued that undisputed facts as to Pendleton's admitted use, possession, solicitation, and distribution of methamphetamine established that Pendleton committed criminal acts reflecting ad-

---

**3.** This rule provides in pertinent part:
Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter....
Utah R. Civ. P. 36(a)(2).

versely on his honesty, trustworthiness, or fitness as a lawyer in violation of rule 8.4(d). The disciplinary court granted the motion for partial summary judgment on September 18, 1998. In its order granting the motion for partial summary judgment, the disciplinary court made numerous findings of fact, including (1) Pendleton's default admissions, (2) Pendleton's admission at an earlier hearing that he possessed and used methamphetamine over an extended period of time, and (3) the fact of Pendleton's conviction for his possession or use of methamphetamine. The court concluded in its order that Pendleton had violated rule 8.4(d) and ordered that a sanctions hearing be held to determine the appropriate sanctions for Pendleton's misconduct.

¶ 15 On November 5, 1998, Pendleton served a number of interrogatories upon the OPC. The OPC thereafter moved for a protective order on the grounds that the discovery requests were irrelevant and not reasonably calculated to lead to admissible evidence. On December 24, 1998, the disciplinary court granted the OPC's motion and entered a protective order.

¶ 16 The disciplinary proceeding against Pendleton culminated in a sanctions hearing commenced on January 27, 1999, to determine the appropriate permanent sanction to be imposed upon Pendleton. At the hearing, Pendleton testified that he had been convicted for possessing methamphetamine, that he had obtained methamphetamine from a client, that he had repeatedly used methamphetamine, that he had violated his probation agreement and had been sent to jail, that he had refused to submit to urinalysis while in jail, and that he knew possessing methamphetamine and asking another to procure it for him were criminal acts.

¶ 17 Other witnesses, including clients of Pendleton, testified at the hearing. Marlene Meyers testified that while a client of Pendleton, she smoked methamphetamine with Pendleton at his office. Donald Mills testified that while a client of Pendleton, he received legal services in exchange for methamphetamine, Pendleton paid him to purchase methamphetamine for Pendleton, he used methamphetamine with Pendleton several times, and Pendleton supplied him with methamphetamine. Other witnesses testified that when Pendleton presented himself to the jail to serve his sixty-day sentence for violating his probation agreement, he was under the influence of methamphetamine.

¶ 18 On March 5, 1999, the disciplinary court ordered that disbarment was the appropriate presumptive sanction for Pendleton's misconduct and, in the alternative, that even if suspension was the presumptive sanction, disbarment was still proper due to several aggravating factors. The court based its ruling upon its findings of fact regarding evidence presented at the sanctions hearing as to Pendleton's use, distribution, and procurement of methamphetamine. The court also incorporated those findings of fact set forth in its earlier order granting partial summary judgment against Pendleton, which were based on Pendleton's admissions and his conviction.

¶ 19 Pendleton now appeals the disciplinary court's ruling and raises the following claims of error: (1) the disciplinary court erred in allowing the OPC to pursue this action in the Fifth District Court without first proceeding through a "screening" panel; (2) Pendleton's notice of change of judge was timely; (3) the disciplinary court erred in denying his motion for a protective order and denying relief from his default admissions; (4) the disciplinary court erred in granting the OPC's motion for a protective order; (5) the disciplinary court erred in concluding that disbarment was proper; and (6) the disciplinary court denied Pendleton due process. We will address each argument in turn.

### STANDARD OF REVIEW

¶ 20 "Given the unique nature of attorney discipline proceedings, we may draw our own inferences from the trial court's factual determinations, which we review under a clearly erroneous standard." *In re Stubbs*, 1999 UT 15, ¶ 19, 974 P.2d 296 (citing *In re Tanner*, 960 P.2d 399, 401 (Utah 1998)). While we give serious consideration to the rulings and factual findings of the disciplinary court, "we may make an independent

judgment regarding the appropriate level of discipline" if the evidence warrants. *In re Knowlton,* 800 P.2d 806, 809 (Utah 1990). Our review of this disciplinary proceeding is guided by the stated purpose and scope of the RLDD:

> (c) ... These rules shall be construed so as to achieve substantial justice and fairness in disciplinary matters with dispatch and at the least expense to all concerned parties.
>
> (d) The interests of the public, the courts, and the legal profession all require that disciplinary proceedings at all levels be undertaken and construed to secure the just and speedy resolution of every complaint.

RLDD 1(c)-(d).

## ANALYSIS

### I. THE SCREENING PANEL

¶ 21 Pendleton argues that the disciplinary court erred in allowing the OPC to pursue this action in the district court without first proceeding through a "screening" panel. In addition, he alleges that the OPC was not entitled to raise additional allegations in its formal complaint outside the scope of those allegations raised in the motion for interim suspension.

¶ 22 In the typical case, a disciplinary proceeding is initiated by the filing of an informal complaint with the OPC. *See* RLDD 10(a)(1). After the informal complaint is filed, the OPC has the opportunity to conduct a preliminary investigation into the allegations of misconduct, *see* RLDD 10(a)(3), and the respondent attorney may respond to the allegations raised in the informal complaint, *see* RLDD 10(a)(5). Unless OPC counsel determines that the informal complaint is nonmeritorious, the OPC then refers the case to a screening panel, *see* RLDD 10(a)(5)-(6), whose purpose is to determine whether there is "probable cause to believe that there are grounds for public discipline and that a formal complaint is merited," RLDD 11(a). If the screening panel concludes that probable cause exists, then the OPC can file with the district court "a formal complaint setting forth in plain and concise language the facts

upon which the charge of unprofessional conduct is based and the applicable provisions of the Rules of Professional Conduct." *Id.*

¶ 23 However, it is not always necessary for the OPC to have a screening panel's recommendation before filing a formal complaint. When applicable, rules 18 and 19 enable the OPC to file a petition for interim suspension directly with the district court without going through a screening panel. First, rule 18 applies when the lawyer "poses a substantial threat of irreparable harm to the public" and has violated the Rules of Professional Conduct. RLDD 18(a). When the district court orders interim suspension under rule 18, the OPC is entitled to file a formal complaint in the district court. *See* RLDD 18(b)(2).

¶ 24 Second, rule 19 applies when the lawyer "has been convicted of a crime which reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer." RLDD 19(b). If a lawyer is convicted of a crime that falls within the purview of rule 19, the OPC may file concurrently a motion for interim suspension and a formal complaint. *See* RLDD 19(b). In sum, both rule 18 and rule 19 obviate the need for the OPC to proceed through a screening panel for a determination of probable cause before filing a formal complaint.

¶ 25 Rules 18 and 19 do not, however, alter the requisites of the formal complaint. These requirements—which apply to proceedings that are screened by a panel or are commenced directly in the district court—are listed in rule 11(a). This rule states that the formal complaint shall "set[ ] forth in plain and concise language the facts upon which the charge of unprofessional conduct is based and the applicable provisions of the Rules of Professional Conduct." RLDD 11(a). These broad requirements thus permit the OPC to include in its complaint any facts on which its disciplinary proceeding will be based. The formal complaint need not be limited to the specific allegations that supported the petition for interim suspension.

¶ 26 In the instant case, four separate counts of drug-related offenses were filed against Pendleton in the criminal court. Af-

ter discovering the pending criminal charges against Pendleton, the OPC filed a petition for interim suspension in the disciplinary court under rule 18. The allegations on which the rule 18 petition was based were Pendleton's pending criminal charges and the alleged conduct that prompted those charges. The disciplinary court granted the petition and suspended Pendleton. Subsequently, the criminal court convicted Pendleton for use or possession of methamphetamine. After Pendleton was convicted, the OPC filed a formal complaint in the disciplinary court. The formal complaint included not only the allegations stated in the earlier petition for interim suspension, but also the fact that Pendleton's conviction had been entered, along with evidence of additional purported misconduct that was discovered after the rule 18 petition was filed.

¶ 27 As rule 18 makes clear, it was proper for the OPC to file a formal complaint after the disciplinary court ordered interim suspension under rule 18. Under this rule, it was unnecessary for the OPC to proceed first through a screening panel. Moreover, nothing precluded the OPC from including in its formal complaint additional allegations of purported misconduct that arose or were discovered after the petition for interim suspension was filed. Our review of the formal complaint indicates that it satisfied the basic requirements outlined in rule 11(a). Furthermore, although we stated in our previous order that it was error for the disciplinary court to order interim suspension under rule 18, we stayed the interim suspension of Pendleton "pending final disposition of the disciplinary proceeding" against him. We did not stay the ongoing final disciplinary proceeding or in any way limit the scope of the formal complaint that had been filed in the disciplinary court. Rather, our order made clear that Pendleton's conduct was "certainly reprehensible and constitute[d] grounds for disciplinary proceedings."

¶ 28 In addition, even after we stayed the interim suspension under rule 18, the OPC was still entitled to file a motion for interim suspension under rule 19. We made this clear in our earlier order, recognizing that by that time, Pendleton had been convicted of a crime that "reflect[ed] adversely on [Pendleton]'s honesty, trustworthiness or fitness as a lawyer." RLDD 19(b). However, when the OPC filed the rule 19 motion for interim suspension, there was no need for the OPC to file another formal complaint. The rule 19 motion simply requested the interim suspension of Pendleton pending the final discipline that the OPC already sought by having filed the formal complaint. Finally, because the OPC satisfied the requirements of rule 19, there was no need for the OPC to proceed through a screening panel at this stage of the disciplinary proceeding. Pendleton's first claim of error thus fails.

## II. PENDLETON'S NOTICE OF CHANGE OF JUDGE

¶ 29 Pendleton claims on appeal that the disciplinary court erred when it ruled that Pendleton's notice of change of judge was untimely. Pendleton contends that the requirement that the notice be filed within thirty days after the commencement of the action was satisfied since the action commenced when the formal complaint was filed. Thus, he alleges, the notice was timely. The OPC alleges that the action commenced when the OPC filed its petition for interim suspension and therefore Pendleton's notice was untimely.

¶ 30 Rule 11 of the RLDD states that a lawyer is entitled to a change of judge as of right if the lawyer files a notice of change of judge within thirty days "after commencement of the action." RLDD 11(d)(2). We thus must determine when an action commences in the context of a lawyer disciplinary proceeding. Rule 11 outlines the procedure by which a typical case proceeds from a screening panel to the district court:

> (a) *Commencement of action.* In the event the screening panel finds probable cause to believe that there are grounds for public discipline and that a formal complaint is merited, OPC counsel shall prepare and file with the district court a formal complaint. . . .

RLDD 11(a). Thus, when proceeding through a screening panel, an action is not commenced until a formal complaint is filed

with the district court. The formal complaint is the first pleading filed with the district court, and it is at that stage of the proceedings that a district judge is assigned to the case.

¶ 31 However, a disciplinary proceeding that is brought under rule 18 is different. As discussed above, rule 18 permits the OPC to bypass the screening panel by petitioning for interim suspension directly to the district court when the lawyer poses a substantial threat of irreparable harm to the public. In such a case, the petition for interim suspension is the first pleading filed with the court, and it is at that stage of the proceeding that a district judge is assigned to the case. The subsequent filing of a formal complaint under rule 18 is simply another step in the disciplinary proceeding that was already initiated by filing a petition for interim suspension. Thus, the "action" is "commenced" under rule 18 when the petition for interim suspension is filed.[4]

¶ 32 In the instant case, the OPC filed a rule 18 petition for interim suspension against Pendleton on July 2, 1997, and a formal complaint on March 3, 1998. Judge Bunnell was assigned to this case when the petition for interim suspension was filed and was still presiding over the disciplinary proceeding when Pendleton filed a notice of change of judge on April 1, 1998, more than thirty days after the petition was filed and the action was commenced. Thus, Pendleton's notice was untimely and was properly denied by Judge Cornaby.

### III. THE OPC'S REQUEST FOR ADMISSIONS

¶ 33 Pendleton argues that the court erred in denying his motion for a protective order, which sought relief from the OPC's request for admissions, in ruling that the matters were deemed admitted against him, and in denying his motion for relief from the default admissions.

#### A. Pendleton's Motion for a Protective Order

¶ 34. We first address the disciplinary court's denial of Pendleton's motion for a protective order. Pendleton objected to the OPC's request for admissions because the request was filed during the pendency of his appeal of the rule 18 interim suspension to this court. Pendleton claims that the disciplinary court lacked jurisdiction over the disciplinary proceeding during that time. He specifically claims that the disciplinary court incorrectly ruled that his motion was untimely.

¶ 35 We disagree with Pendleton's characterization of the disciplinary court's ruling. The disciplinary court specifically stated that its denial of Pendleton's motion was not based on the timeliness of the motion. Rather, the court explained in its order denying the motion:

> The Respondent's motion is so general that it in effect is asking the Court to deny the Bar its rights of discovery in preparing for the disbarment proceeding. For the Court to enter such a general and all-inclusive protective order would deny the Bar its discovery rights as set forth in the Rules of Civil Procedure.

The court did not address the timeliness of Pendleton's motion or the jurisdictional issue raised by Pendleton. Nonetheless, before we can address whether the disciplinary court set forth a proper basis for denying the motion, it is necessary for us to address the jurisdictional issue raised by Pendleton.

¶ 36 Under rule 5 of the Utah Rules of Appellate Procedure, when a litigant appeals from a nonfinal, interlocutory order, the appellate court's review of the appeal is discretionary. *See* Utah R.App. P. 5(a). Moreover, it is generally recognized that the granting of an interlocutory appeal does not normally divest the district court of jurisdiction over the underlying matter. *See* 16 Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* § 3921.2, at 53–64 (1996); *see also, e.g., Ex Parte Nat'l Enameling & Stamping Co.,* 201 U.S. 156, 162, 26 S.Ct. 404, 50 L.Ed. 707 (1906) ("It was not intended that the cause as a whole

---

4. In contrast, an action commences under rule 19 when both the petition for interim suspension and the formal complaint are filed because both must be filed concurrently under rule 19.

should be transferred to the appellate court prior to the final decree. The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered."); *Equal Employment Opportunity Comm'n v. Norris,* Nos. 99–5068, 99–5089, 216 F.3d 1087, 2000 U.S.App. LEXIS 14680, at *3–*4 (10th Cir. June 27, 2000). When the scope of the interlocutory appeal is not affected by litigation of the underlying action, the interest in expediting litigation requires that the district court proceed with the action. *See* 16 Wright, *supra,* at 54, 56. An interim suspension order, by definition, is a nonfinal order because it is entered *"pending final disposition of a disciplinary proceeding* predicated upon the conduct causing the harm." RLDD 18(b) (emphasis added). Thus, the appeal of an interim suspension order is interlocutory and does not normally divest the district court of jurisdiction over the pending disciplinary proceeding.

¶ 37 In the instant case, Pendleton's earlier appeal to this court from the disciplinary court's interim suspension order was an appeal from a nonfinal, interlocutory order. Moreover, the pending proceeding to determine whether permanent disciplinary sanctions should be imposed against Pendleton was in no way dependent upon our disposition of Pendleton's interlocutory appeal. Thus, even though the disciplinary court failed to address this issue, the disciplinary court retained jurisdiction over the ongoing disciplinary proceeding, and the OPC was entitled to proceed with discovery.

¶ 38 We now examine whether the disciplinary court properly denied Pendleton's motion for a protective order. Rule 26(c) of the Utah Rules of Civil Procedure provides in pertinent part:

Upon motion of a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

    (1) that discovery not be had;

. . .

    (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters....

Moreover, we have stated that the district court is entrusted with broad discretion in dealing with discovery matters, namely, protective orders. *See R. & R. Energies v. Mother Earth Indus., Inc.,* 936 P.2d 1068, 1079 (Utah 1997). This court will " 'not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's rulings.' " *Id.* (quoting *Askew v. Hardman,* 918 P.2d 469, 472 (Utah 1996)).

¶ 39 In the instant case, Pendleton's motion sought a protective order "relieving him from responding to all of the Bar's requests for admissions, interrogatories, and requests for production of documents." Pendleton set forth two grounds for the relief he requested in his motion:

1. The requested discovery is not reasonably calculated to lead to the discovery of admissible evidence.

2. The requested discovery seeks information which has no relationship to the professional misconduct which is properly alleged and is the subject matter of these proceedings: information which would establish that of which respondent has never been accused. It is impermissible inquisition.

¶ 40 The disciplinary court correctly ruled that Pendleton's motion would have denied the OPC any further meaningful discovery in this case. The court correctly determined that the OPC's specific interrogatories, requests for admissions, and requests for production of documents were reasonably calculated to lead to the discovery of admissible evidence. The OPC's complaint involved allegations of criminal activity, into which the OPC's requested discovery properly inquired. Moreover, the OPC's requested discovery sought to find evidence establishing certain aggravating factors, including Pendleton's addiction to methamphetamine and his failure to seek treatment, and his failure to comply with the disciplinary court's rule 18

order of interim suspension. Discovering this evidence was essential to the OPC's duty to determine whether Pendleton had violated the Rules of Professional Conduct and what sanction should be imposed.

¶ 41 Furthermore, Pendleton's motion for a protective order was untimely under rule 36 of the Utah Rules of Civil Procedure because it was not filed within thirty days of service of the request for admissions. As discussed above, Pendleton's interlocutory appeal did not prevent the OPC from requesting discovery, nor did it relieve Pendleton of his duty to respond within thirty days. Thus, the disciplinary court did not abuse its discretion when it denied Pendleton's motion for a protective order.

### B. Pendleton's Default Admissions

¶ 42 We next address whether the matters set forth in the OPC's request for admissions were properly deemed admitted. The disciplinary court deemed the matters admitted because Pendleton failed to file a timely response to the OPC's request for admissions. Rule 36 makes clear that "[e]ach matter of which an admission is requested ... is admitted" if not responded to within thirty days. Utah R. Civ. P. 36(a)(2); *see also Triple I Supply, Inc. v. Sunset Rail, Inc.*, 652 P.2d 1298, 1299–1300 (Utah 1982). In the instant case, Pendleton failed to timely respond to the OPC's request for admissions. Thus, the trial court correctly concluded that the matters set forth in the OPC's request were deemed admitted.

### C. Pendleton's Motion for Relief from His Admissions

¶ 43 In *Langeland v. Monarch Motors, Inc.*, we addressed the effect of a party's failure to timely respond to a request for admissions. *See* 952 P.2d 1058, 1060–64 (Utah 1998). In that case, we explained:

Requests for admission must be taken seriously, and answers or objections must be served promptly. The penalty for delay or abuse is intentionally harsh, and parties who fail to comply with the procedural requirements of rule 36 should not lightly escape the consequences of the rule.

*Id.* at 1061. Rule 36 provides that

the court may permit withdrawal or amendment [of the admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

Utah R. Civ. P. 36(b). We explained in *Langeland* that in order to show that withdrawal or amendment promotes the presentation of the merits of the action,

the party seeking amendment or withdrawal must (1) show that the matters deemed admitted against it are relevant to the merits of the underlying cause of action, and (2) introduce some evidence by affidavit or otherwise of specific facts indicating that the matters deemed admitted against it are in fact untrue.

952 P.2d at 1062. If the moving party fails to satisfy this two-part test, the nonmoving party is relieved of. its burden under rule 36(b) to show that it would suffer prejudice as a result of the withdrawal or amendment, and the trial court has no discretion to grant the motion for relief from the admissions. *See id.* at 1063–64.

¶ 44 We thus turn to the instant case to determine whether Pendleton has met his burden of proving that relief from the admissions promotes the presentation of the merits of the action. First, under *Langeland*, Pendleton must show the relevance of the admissions to the merits of the disciplinary proceeding. *See id.* at 1062. The admissions are clearly relevant to the disciplinary proceeding against Pendleton because they involve Pendleton's possession, use, procurement, and distribution of methamphetamine, the allegations upon which the disciplinary proceeding was premised. Second, under *Langeland*, Pendleton must introduce evidence that the matters deemed admitted are untrue, and "something more than a bare denial is required." *Id.* Pendleton has failed to meet this burden. His belated response to the OPC's request for admissions included denials of several of the requests, but he

failed to support his denials with any supporting evidence or affidavit. Moreover, his motion for relief from the admissions merely contends that the default admissions have a prejudicial effect upon him. Again, he failed to present any evidence supporting his contention of prejudice or the falsity of the admissions. Thus, Pendleton has failed to meet his burden under rule 36(b) of establishing that relief from the admissions would promote the presentation of the merits of the action against him. As a result, as we explained in *Langeland,* 952 P.2d at 1063–64, because Pendleton failed to meet his burden under rule 36(b), the disciplinary court had no discretion to grant Pendleton's motion for relief from his admissions. Thus, the disciplinary court properly denied Pendleton's motion.

## IV. THE OPC'S MOTION FOR A PROTECTIVE ORDER

¶ 45 Pendleton next claims that the disciplinary court erred in granting the OPC's motion for a protective order and thus providing relief from any obligation to respond to Pendleton's interrogatories. As discussed above, the district court is granted broad discretion in whether to enter a protective order. *See R. & R. Energies v. Mother Earth Indus., Inc.,* 936 P.2d 1068, 1079 (Utah 1997). We will " 'not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's rulings.' " *Id.* (quoting *Askew v. Hardman,* 918 P.2d 469, 472 (Utah 1996)).

■ ¶ 46 The disciplinary court granted the OPC's motion for a protective order on two bases. First, the disciplinary court held that at the time Pendleton's interrogatories were filed and served, the only aspect of this case to be concluded was the sanctions hearing, and thus, any proper discovery request "would have to be limited to matters covered by rule 4 of the Rules of Professional Conduct and matters in aggravation or mitigation of the sanctions to be imposed." Exam-

ining Pendleton's interrogatories, however, the court concluded:

[N]one of the interrogatories, except for the request to identify contemplated witnesses, would lead to admissible evidence on this final issue or they cover privileged or confidential information; [Pendleton's requests] are cumulative since much of the information requested is already in the record by way of deposition or transcript; [and the requests] call[ ] for mental impressions, conclusions or legal theories of the Utah State Bar or [its] attorneys.

Second, the court noted that the interrogatories were signed by Pendleton, not by his attorney of record, as required by rule 11 of the Utah Rules of Civil Procedure.[5]

¶ 47 We conclude that both bases on which the disciplinary court entered a protective order were proper. First, as the court correctly noted, the interrogatories would not lead to the discovery of admissible evidence, were cumulative, and called for OPC work product. Pendleton's interrogatories included, for example, such requests as "[i]dentify your ultimate objective in the instant case and identify the criteria by which it was established"; "[s]tate whether or not disciplinary counsel is subject to any professional discipline under the Rules of Lawyer Discipline and Disability or under any other established regimen [sic]"; and "[i]dentify the factors which have lead [sic] you to conclude that allegations of professional misconduct which you advanced in your petition can be appropriately asserted as grounds for permanent discipline in your formal complaint whether or not Judge Bunnell found merit in them." As the disciplinary court correctly concluded, these requests would not lead to the discovery of admissible evidence, and they lack any other justifiable legal basis for discovery. It was therefore proper for the disciplinary court to grant relief from Pendleton's interrogatories.

¶ 48 Second, the disciplinary court properly concluded that it was necessary under rule 11 for Pendleton's discovery request to be

---

5. This rule provides in relevant part:
   Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or if the party is not represented by an attorney, shall be signed by the party.
   Utah R. Civ. P. 11(a).

signed by his attorney of record. At the time the requested discovery was served, Pendleton was not acting pro se; rather, his attorney of record was Jim R. Scarth. Thus, it was necessary under rule 11 for Mr. Scarth to sign Pendleton's discovery request. Because Mr. Scarth did not sign the request, the disciplinary court properly ruled that Pendleton had failed to meet the requirements of rule 11. In sum, the disciplinary court did not abuse its discretion by entering a protective order to relieve the OPC from Pendleton's substantively and procedurally improper discovery request.

## V. DISBARMENT

¶ 49 Pendleton claims that the disciplinary court erred in concluding that disbarment was an appropriate sanction for his misconduct. Pendleton argues that suspension was appropriate, and he takes issue with the disciplinary court's reliance upon aggravating factors. The OPC contends that disbarment was the appropriate presumptive sanction and that even if suspension were the correct presumptive sanction, disbarment was still appropriate due to the aggravating factors established by the OPC.

¶ 50 Rule 4.2 of the Standards for Imposing Lawyer Sanctions ("SILS") states that disbarment is appropriate when a lawyer engages in serious criminal conduct involving "the sale, distribution, or importation of controlled substances; . . . or . . . solicitation of another to commit any of these offenses." SILS Rule 4.2(b). Rule 4.3 of the SILS explains that suspension is an appropriate sanction when the lawyer engages in criminal conduct that "seriously adversely reflects on the lawyer's fitness to practice law." SILS Rule 4.3(b). Rule 6.1 of the SILS provides, "After misconduct has been established, aggravating and mitigating circumstances may be considered and weighed in deciding what sanctions to impose." Possible aggravating factors pertinent to this case include:

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

. . .

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge the wrongful nature of the misconduct involved, either to the client or to the disciplinary authority;

(h) vulnerability of victim;

(i) substantial experience in the practice of law. . . .

SILS Rule 6.2. Potential factors in mitigation include, for example, the absence of a prior record of discipline. See SILS Rule 6.3. Factors in aggravation or mitigation are not limited to those specifically enumerated in the rules. See SILS Rules 6.2, 6.3.

■ ¶ 51 In the instant case, the disciplinary court concluded that the appropriate presumptive sanction was disbarment and, in the alternative, suspension aggravated to disbarment.

¶ 52 The disciplinary court premised its conclusion that disbarment was the appropriate presumptive sanction not upon the fact of Pendleton's criminal conviction for methamphetamine possession, but upon the court's factual findings regarding Pendleton's possession, use, procurement, and distribution of methamphetamine. On the basis of evidence presented at the sanctions hearing, the disciplinary court found that Pendleton testified to using methamphetamine fifty or sixty times within a three-year period. The court also found that Pendleton accepted methamphetamine from Mills in exchange for legal services. On two or three occasions, Mills received money from Pendleton to purchase methamphetamine for Pendleton, and Mills supplied methamphetamine to Pendleton twelve to fifteen times from June 1995 to October 1996. The disciplinary court also found that Pendleton supplied methamphetamine to Meyers and smoked methamphetamine with her in his office while she was a client and within the setting of the attorney-client relationship. The court found that Pendleton violated his probation agreement by receiving traffic citations and failing to report them to his probation officer and then being arrested for failing to appear. The court found that Pendleton had been sentenced to sixty days in jail for his probation

violation and that he was under the influence of methamphetamine when he reported to jail to serve his sentence. Furthermore, the disciplinary court incorporated in its final order of disbarment the findings of fact from its order of partial summary judgment, which included Pendleton's admissions regarding his possession, use, procurement, and distribution of methamphetamine, and also his criminal conviction.

¶ 53 Pendleton argues that these findings are unsupported by the evidence in the record. Pendleton fails, however, to marshal the evidence in support of the disciplinary court's findings, and regardless, the court's findings are amply supported by the record.[6]

¶ 54 In view of these findings, the disciplinary court concluded that Pendleton had violated rule 8.4(b) of the Rules of Professional Conduct,[7] and the court held that Pendleton had engaged in serious criminal conduct involving "the sale, distribution, or importation of controlled substances; ... or ... solicitation of another to commit any of these offenses," justifying the presumptive discipline of disbarment under rule 4.2 of the SILS.

¶ 55 Pendleton argues that disbarment was not the appropriate presumptive sanction for his misconduct because his only criminal conviction, on which the interim suspension order was premised, was for simple possession of methamphetamine. However, nothing in the SILS or the RLDD limits the scope of a disciplinary proceeding and the ultimate sanction imposed to the conduct for which the court enters an interim suspension. Moreover, nothing prevents the court in a disciplinary proceeding from making findings of fact regarding a lawyer's criminal misconduct, even if that misconduct has not yet resulted in a criminal conviction.

¶ 56 As discussed above, an interim suspension order is a temporary sanction that is entered pending the final disposition of a disciplinary proceeding against the lawyer. The interim suspension order enables the disciplinary court to take swift action against the lawyer to protect the public while preserving the opportunity to then conduct a full-scale disciplinary proceeding to determine the scope and extent of the lawyer's misconduct. The OPC's investigation may invariably reveal, after the interim suspension order is entered, additional instances of misconduct, and there is no justifiable basis for preventing the disciplinary court from making findings in regard to such misconduct and using these findings to determine an appropriate sanction. Indeed, to enable the court to adequately weigh and appreciate the gravity of the lawyer's misconduct, it is necessary that the OPC bring all instances of misconduct to the court's attention. This serves "[t]he interests of the public, the courts, and the legal profession," as required under rule 1(d) of the RLDD. Thus, there is no reason to limit the scope of a final disciplinary proceeding to the misconduct that precipitated the interim suspension order.

¶ 57 Moreover, in determining an appropriate sanction for lawyer misconduct, the SILS do not prevent the disciplinary court from examining criminal conduct that has not yet resulted in a criminal conviction. While an interim suspension order is proper under rule 19 of the RLDD only if the lawyer has been convicted of a crime, disbarment is proper anytime a lawyer engages in "serious criminal conduct," as set forth in rule 4.2(b) of the SILS, regardless of whether the lawyer was ultimately convicted of the misconduct. Enabling the disciplinary court to examine all of the lawyer's criminal acts that are revealed during the discovery process promotes "consideration of all factors relevant to imposing the appropriate level of sanction in an individual case." SILS Rule 1.3(a). Thus, it was proper for the disciplin-

---

6. "To successfully challenge a trial court's findings, an appellant must first marshal all the evidence that supports the trial court's findings. After marshaling the supportive evidence, the appellant then must show that, even when viewing the evidence in a light most favorable to the trial court's ruling, the evidence is insufficient to support the trial court's findings." *State v. Gamblin*, 2000 UT 44, ¶ 17 n. 2, 1 P.3d 1108.

7. "It is professional misconduct for a lawyer to ... [c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects...." Utah R. Prof. Conduct 8.4(b).

299

ary court to conclude, from its factual findings, that Pendleton sold and distributed controlled substances and solicited the distribution of controlled substances, even though he was not convicted of such offenses. Furthermore, in light of Pendleton's serious criminal misconduct, the disciplinary court correctly concluded that disbarment was the appropriate presumptive sanction. Having thus concluded that disbarment was the correct presumptive sanction for Pendleton's misconduct, we need not address the disciplinary court's alternative conclusion that if suspension was the appropriate presumptive sanction, disbarment was still appropriate due to numerous aggravating factors.

## VI. DUE PROCESS

¶ 58 Pendleton's final claim of error is that he was denied due process "as a result of disciplinary counsel's overreaching and the district court's bias." Pendleton's due process claim involves a series of allegations. First, he claims that OPC counsel used hearsay to persuade the disciplinary court to issue its interim suspension order under rule 18. This claim is moot because this court has previously vacated the rule 18 order. Second, Pendleton contends that the court's findings in support of the disbarment order were unsupported by the record. However, he fails to indicate which findings are unsupported and fails to marshal the evidence. Third, Pendleton argues that the disciplinary court improperly limited his cross-examination of Mills. Again, Pendleton fails to show that the disciplinary court abused its discretion, and he presents no evidence of the disciplinary court's alleged bias. Finally, he claims that the disciplinary court willfully distorted the record. This allegation also lacks any support or explanation. In sum, Pendleton fails to cite any authority for the proposition that any of these events constituted a deprivation of due process, and our review indicates that he received all of the process that was due under the applicable rules.

## CONCLUSION

¶ 59 The disciplinary court did not err in ruling that the appropriate sanction for Pen-

dleton's misconduct was disbarment. We therefore affirm the disciplinary court's ruling.

¶ 60 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.