**Ted Sherill WHITEHOUSE, Plaintiff and Respondent,**

v.

**Kathleen Shields WHITEHOUSE, Defendant and Appellant.**

No. 880491–CA.

Court of Appeals of Utah.

March 21, 1990.

---

Frank T. Mohlman (argued), Mohlman and Young, Tooele, for defendant and appellant.

Ephraim H. Fankhauser (argued), Salt Lake City, for plaintiff and respondent.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

BILLINGS, Judge:

Appellant, Kathleen Shields Whitehouse ("Shields") appeals from the trial court's order granting respondent, Ted Sherill Whitehouse's ("Whitehouse") petition to modify the parties' divorce decree. Principally, Shields complains the court erred in awarding Whitehouse an unconditional equity interest in the marital home. We agree and therefore reverse.

The Whitehouses were married on August 17, 1962, and had three children during the course of their nineteen-year marriage. All of the children have reached majority. The Whitehouses, each represented by counsel, entered into a property settlement agreement which became the basis for a divorce decree entered on September 12, 1983.

At the time of the divorce, Whitehouse had an annual salary of over $50,000. Shields earned a gross income of $13,000 per year. Under the decree, Shields was awarded custody of the children, child support and alimony.

The decree also gave Shields the family home. However, one half of the equity in the home was to be paid to Whitehouse under certain delineated conditions. Shields was also awarded part of Whitehouse's retirement account, however the

decree did not set a time for a payout of her interest.

In August 1987, Whitehouse filed a petition for modification of the divorce decree wherein he asked that child support and alimony be eliminated, and that Shields' interest in his retirement fund be satisfied by off-setting it against his equity in the family home.

At the hearing on this petition, Shields asked the court for immediate payment of her share of Whitehouse's retirement benefits since Whitehouse had received the funds after terminating his employment and had then re-invested them to prevent income tax liabilities.

The trial court eliminated the payment of child support and alimony. Shields does not appeal these rulings. In addition, the court found the provisions in the divorce decree describing Whitehouse's interest in the family home were ambiguous and reformed the home equity payout provision based upon what the court found the parties intended at the time of the divorce.

The specific provisions in the divorce decree that the trial judge found ambiguous read, in pertinent part:

> The Defendant is awarded the parties [sic] real property ... subject to Plaintiff's interest in one half of the equity of said residence existing as of the date of the divorce herein in the sum of $15,000 conditioned upon the Defendant's selling said residence or remarrying within seven and one half years of the date of the decree herein.

The finding of fact in support of the decree of divorce reads, in pertinent part and with our emphasis:

> It is fair and equitable that Defendant be awarded the possession, care and control of said residence subject to the right of the Plaintiff to receive the sum of $15,-000 as one-half equity of the said residence existing as of the date of the divorce herein, the same to be paid and awarded *only* upon the condition that the residence be sold within seven and one-half years of the date of the decree or the Defendant remarrying within said time.

The conclusion of law in support of the decree of divorce reads, in pertinent part:

> Defendant should be awarded the parties' real property subject to the Plaintiff's right to one-half of the equity in the sum of $15,000.00 should the house be sold within seven and one-half years of the date of the decree or the Defendant remarrying within said period.

At the hearing on the petition for modification, both parties testified as to their understanding of the home equity provisions contained in the divorce decree. Whitehouse testified that he understood the decree to give him a vested right to a $15,000 equity interest in the family home payable after seven-and-one-half years, or when Shields remarried. Shields testified that her understanding of the divorce decree was that if she did not remarry or sell the house within seven-and-one-half years, the house would be hers, free of any claim of Whitehouse.

On May 23, 1988, after a hearing on Whitehouse's petition for a modification of the divorce decree, the trial court ordered, in pertinent part:

> The language of paragraph 6 of the Decree of Divorce is hereby modified and clarified to provide that the equity awarded Plaintiff shall become due and payable at the time Defendant remarries, sells the home or seven and one-half (7½) years from the time of the entry of the Decree of Divorce, whichever occurs first.

Because the court reformed the decree to give Whitehouse a vested equity interest in the family home, the court granted Whitehouse's request that Shields' interest in his retirement funds be off-set against his equity in the house. The court thus eliminated Shields' interest in the retirement fund and reduced Whitehouse's equity in the home by a corresponding amount which left his equity at $6,431.

The effect of the court's rulings was to deny Shields' request for an immediate payment of her share of Whitehouse's retirement fund.

Shields filed a motion for a new trial, claiming the trial court's order on the home equity and retirement payout was in error. The court also denied this motion.

## REFORMATION OF DIVORCE DECREE

The threshold question of whether or not a writing is ambiguous is a question of law for a court to decide. *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983); *Property Assistance Corp. v. Roberts*, 768 P.2d 976, 977 (Utah Ct.App.1989). This initial determination does not require resort to extrinsic evidence and thus we accord the trial court's interpretation no presumption of correctness, *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988), but review the trial court's action under a correction of error standard. *Seashores Inc. v. Hancey*, 738 P.2d 645, 647 (Utah Ct.App.1987).

Language in a written document is ambiguous if the words used may be understood to support two or more plausible meanings. *Property Assistance Corp.*, 768 P.2d at 977. A court is justified in determining that a contract or order is ambiguous if its terms are either unclear or missing. *Faulkner*, 665 P.2d at 1293. However, the mere fact that the parties interpret the language differently does not, per se, render the writing ambiguous. *Land v. Land*, 605 P.2d 1248, 1251 (Utah 1980).

■ The September 12, 1983, Divorce Decree plainly states that Shields was to receive the house, "subject to [Whitehouse's] interest in one half of the equity of said residence existing as of the date of the divorce ... *conditioned* upon [Shields] selling said residence or remarrying within seven and one half years of the date of the decree herein." (Emphasis added.) In its findings of fact on this issue, the trial court stated that it would be fair and equitable for Whitehouse to receive one half of the equity in the home, but that this would

occur "only upon the condition" that the events delineated in the decree occurred. The court's conclusions of law yet again reiterate that Whitehouse's interest was contingent upon the house being sold within seven-and-one-half years or Shields remarrying within seven-and-one-half years.

Each pertinent provision in the divorce decree and the findings of fact and conclusions of law, all of which were premised on the parties' settlement agreement, expressly and clearly give Whitehouse a contingent interest in the family home subject to Shields selling the home or remarrying within a seven-and-one-half year period.

We agree with the trial court that the decree provides for a very unusual and perhaps even inequitable division in the equity of the family home. However, we do not agree that the language of the original divorce decree, which resulted from the parties' stipulation, is ambiguous. Thus, we cannot uphold the trial court's modification of the family home equity provisions on the theory of reformation. If the provisions of the decree did not represent what Whitehouse understood to be his agreement on the home equity, he should have so informed his attorney who could have remedied the problem under Utah R.Civ.P. 60(b).

Even if a court does not agree with the division of property contained in a stipulated divorce decree, it is not free to substitute its judgment for that of the parties in modifying what the parties clearly agreed to in the written documents. *See Lea v. Bowers*, 658 P.2d 1213, 1215 (Utah 1983).

■ This, however, does not end our inquiry. It may be that the trial court's decision could be premised on changed circumstances, a question it never reached in view of its erroneous decision to reform the decree on other grounds. Thus, we examine whether the trial court's modification of the distribution of equity in the family home and the timing of the payout of Whitehouse's retirement program[1] can be

---

1. We note that the divorce decree is deficient in failing to provide a time for payment of Shields' interest in the retirement fund. This would

justify the court supplying the missing terms on timing of payment on remand after first resolving the issue of Whitehouse's interest, if any, in

upheld because a substantial change of circumstances has occurred since the entry of the original decree.

## MODIFICATION OF DECREE

■ A court has continuing jurisdiction to modify a divorce decree. *Beckstead v. Beckstead,* 663 P.2d 47, 48 (Utah 1983). However, a party requesting that a divorce decree be modified must demonstrate that there has been "a substantial change of circumstances occurring since the entry of the decree and not contemplated in the decree itself." *Naylor v. Naylor,* 700 P.2d 707, 710 (Utah 1985). *See also Porco v. Porco,* 752 P.2d 365, 367 (Utah Ct.App. 1988).

■ The change necessary to justify a modification of a decree of divorce varies with the type of modification contemplated. Provisions dealing with alimony and child support are more susceptible to alteration at a later date because the needs that such provisions are intended to fulfill are subject to rapid and unpredictable change. *See, e.g., Foulger v. Foulger,* 626 P.2d 412, 414 (Utah 1981). Provisions relating to property, however, should be modified with great reluctance. *Id.* In the interest of promoting stability in titles, modifications in a decree of divorce affecting the "disposition of real property are to be granted only upon a showing of *compelling* reasons arising from a substantial and material change in circumstances." *Id.* (emphasis added). *See also Williams v. Shearwood,* 688 P.2d 475, 476 (Utah 1984) (property divisions should be modified only with great reluctance and upon compelling reasons).

■ This applies *a fortiori* when, as in this case, a decree is based upon a property settlement agreement, negotiated by the parties and sanctioned by the court. *Foulger,* 626 P.2d at 414. In such cases, equity should not be used as a lever to realign rights and privileges "voluntarily contracted away simply because one has come to regret the bargain made." *Lea v. Bowers,* 658 P.2d 1213, 1215 (Utah 1983) (quoting *Land v. Land,* 605 P.2d 1248, 1250–51 (Utah 1980)).

■ Trial courts enjoy broad discretion in deciding whether a decree of divorce should be modified due to a substantial change of circumstances. *See Jense v. Jense,* 784 P.2d 1249 (Ct.App.1989). However, the trial court must make findings on all material issues, and its failure to delineate what circumstances have changed and why these changes support the modification made in the prior divorce decree constitutes reversible error unless the facts in the record are clear, uncontroverted and only support the judgment. *See Acton v. J.B. Deliran,* 737 P.2d 996, 999 (Utah 1987); *Lee v. Lee,* 744 P.2d 1378, 1380 (Utah Ct.App.1987). A trial court's findings must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the court's ultimate conclusions were reached. *Stevens v. Stevens,* 754 P.2d 952, 958 (Utah Ct.App.1988).

■ In this case, the trial court found substantial changes had occurred since the entry of the original stipulated decree in that Shields had experienced an increase of over $12,000 per year in earnings between 1983 and 1987. The trial court also noted that Whitehouse had experienced a loss of employment and a serious reduction in his earning power. Finally, the court acknowledged that two of the couple's children had become emancipated since the original decree and were self-supporting.

These findings of the court were directed to its order terminating the child support and alimony provisions of the decree, not to a modification of the home equity or retirement provisions. Whether or not the trial court would consider these findings, coupled with the evidence before it, an adequate basis to modify the property distribution is simply unclear in the record before us.

The court modified the home equity provision and the retirement fund payout not

the home equity in a manner consistent with our opinion. *Faulkner v. Farnsworth,* 665 P.2d

1292, 1293 (Utah 1983).

because a substantial change of circumstances had occurred but because the court found the language of the prior decree to be "deficient and ambiguous ... requir[ing] clarification by the court."

Based upon the foregoing, we conclude that the findings are insufficient and the uncontested evidence in the record does not support the trial court's modification of the home equity provisions or the retirement provisions of the original divorce decree. Therefore, we reverse and remand for proceedings consistent with this opinion on the issue of the rights of Whitehouse to any equity in the house on a changed circumstance basis and the timing of the retirement fund payouts to Shields.[2]

GARFF and ORME, JJ., concur.

---

**2.** We find Whitehouse's contention that the issues presented on this appeal are moot to be without merit. It is clear from the record that Shields preserved her right to challenge the lower court's ruling on appeal.