2013 UT App 83

# THE UTAH COURT OF APPEALS

CATHERINE N. GULLICKSON,

*Petitioner and Appellee,*

*v.*

JEFFREY M. GULLICKSON,

*Respondent and Appellant.*

Opinion
No. 20110700-CA
Filed April 4, 2013

Third District, Salt Lake Department
The Honorable John Paul Kennedy
No. 044904488

Theodore R. Weckel Jr., Attorney for Appellant
Paul H. Liapis and Kim M. Luhn, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion,
in which JUDGE MICHELE M. CHRISTIANSEN concurred.
JUDGE JAMES Z. DAVIS dissented in part and concurred in part,
with opinion.

ROTH, Judge:

¶1     Jeffrey M. Gullickson (Husband) appeals from the district court's order on a petition to modify the divorce decree and a petition for temporary order filed by Catherine N. Gullickson (Wife). Specifically, Husband contends that, without an evidentiary hearing, the district court improperly modified the divorce decree's distribution of the home in which the parties had resided during the marriage; overruled his objection to Wife's plan to move out of

state with the parties' minor child, and the corresponding adjustment to his parent-time, without a showing of immediate and irreparable harm as required by Utah Rule of Civil Procedure 106; denied him an evidentiary hearing on these issues; and refused to consider his contempt claim. He also seeks his attorney fees incurred in the home modification proceedings. We vacate the court's order regarding the home and remand for a modification hearing. On remand, the court should reconsider the award of attorney fees as appropriate following the modification hearing. Otherwise, we affirm the district court.

BACKGROUND

¶2     In January 2008, as part of the resolution of property issues in their divorce proceeding, the parties reached an agreement about how to deal with the house they had lived in during the marriage. The house was Husband's premarital property, but the divorce court had awarded a one-half equitable interest to Wife based on her maintenance and enhancement of the home during the marriage. In addition, according to the second amended divorce decree (the divorce decree),[1] Wife was permitted to live in the home until January 22, 2013, with the parties' teenaged son, who has special needs. During this time, Wife was to be responsible for making the payments on the two mortgages, which totaled approximately $2,800 per month. At the end of the five-year period, Husband was required to either buy out Wife's 50% share of the equity in the property or put the house up for sale, with the sale proceeds to be divided as specified in the divorce decree. Husband

---

[1]The second amended divorce decree incorporates the settlement terms regarding the home, and it otherwise governs the terms of the parties' divorce. Because this appeal requires us to consider only the second amended decree, we refer to it simply as the divorce decree.

was to notify Wife of which alternative he intended to pursue "[w]ithin six (6) months prior to January 22, 2013."

¶3      The divorce decree also awarded Wife primary physical custody of the son and awarded parent-time to Husband. The parties agreed to suspend Husband's parent-time, however, after Husband and the son were involved in an altercation. By the parties' agreement, the son was to receive counseling and Husband would refrain from exercising parent-time pending a recommendation from the therapist that the son was ready to resume visitation with Husband. The son's therapy ended in September 2010, but Husband was not notified that he was entitled to resume parent-time and he did not seek to resolve the issue with the court until Wife gave notice that she intended to move from the state. At the time of the hearings before the commissioner and the district court judge in mid-2011, Husband had not had any visitation with the son since November 2009.

¶4      In May 2011, Wife filed a petition to modify the divorce decree and a motion for temporary orders, requesting that Husband's option to buy out her interest or sell the house be accelerated so that she could relocate to Virginia with the son. In the alternative, she requested that she be permitted to rent out the home in order to be able to fulfill her obligation to pay the mortgages. Wife explained that she had been unemployed since fall 2010 and had been unable to find suitable work in Utah. As a result, she had underpaid the May mortgage payments by about $1,500. Husband responded with a countermotion, seeking a temporary restraining order prohibiting Wife from leaving the state with the son, a determination that Wife was in contempt for failing to pay the mortgages as required by the decree, and, if Wife were allowed to relocate, reduction of his $4,000 monthly alimony obligation. The parties' motions were set for hearing before a domestic relations commissioner.

I. The Commissioner Proceedings

¶5      At the hearing before the commissioner, the parties called no witnesses but presented their evidence by proffer only.

A. Real Property Modification

¶6      Regarding the home, Wife explained that because she had been unable to find full-time work locally, she could no longer keep current on the mortgage payments. She had found employment in Virginia, however, at her brother's retail store and was planning to move. Wife represented that she had located and screened two potential renters willing to pay $3,300 per month in rent, more than enough to cover the two mortgage payments. Alternatively, she proposed that Husband assume responsibility for paying the mortgages until January 2013 and that he could rent out the property himself to cover the expense.

¶7      Husband objected to Wife's request to rent the property, asserting that while Wife had an equitable interest, he, and not Wife, was "the owner of the property and [Wife] does not have the right to rent the property." Husband further objected to Wife's alternative proposal that the burden of paying the mortgages be shifted to him in advance of the January 2013 option date, a period of approximately nineteen months. Husband asserted that Wife's proposal would constitute a permanent modification of the divorce decree and seemed to take the position that a trial or evidentiary hearing was required to resolve the issue, not simply a proceeding before the commissioner. In addition, Husband argued that rule 106 of the Utah Rules of Civil Procedure limits temporary orders in modification proceedings to child support, custody, and parent-time, thus precluding the interim changes that Wife sought in the divorce decree's allocation of responsibility for the mortgages. *See generally* Utah R. Civ. P. 106(b) (explaining that the "decree sought to be modified remains in effect during the pendency of the petition [to modify]," except with respect to child support, custody, and parent-time orders, which may be modified in the interim

under certain circumstances). The commissioner disagreed that the circumstances created a need for modification of the divorce decree because he did not see "anything in the decree that would not allow [Wife] th[e] opportunity to rent the home." Accordingly, the commissioner offered Husband the choice of accelerating his option to sell the home or allowing Wife to rent the home and continue paying the mortgages. Although the commissioner's decision amounted to a recommendation to be submitted to the district court, he ordered Husband to make an election between the two alternatives within fifteen days of the hearing, a date that occurred prior to the hearing before the district court.

B. Wife's Relocation

¶8    With regard to parent-time, Husband asserted that Wife had failed to establish the "immediate and irreparable harm" required for temporary modification of the decree under rule 106 to allow her to move immediately to Virginia with their son. *See id.* R. 106(b)(1)(B) (authorizing a court to "order a temporary modification of . . . parent-time to address an immediate and irreparable harm . . . , provided that the modification serves the best interests of the child" while a petition to modify is pending). The commissioner disagreed with Husband's argument that the move constituted a temporary modification under rule 106 and recommended that Wife be allowed to move and that Husband receive parent-time according to the schedule recommended by the Guardian ad Litem (GAL), which essentially followed the schedule provided in Utah Code section 30-3-37.[2] *See* Utah Code Ann. § 30-3-

---

[2]The GAL actually made a recommendation for parent-time in summer 2011 that did not precisely comport with the statutory parent-time requirements. That recommendation appears to have been aimed at accommodating Wife's move and nurturing the son's relationship with Husband, which had become strained. The GAL anticipated that parent-time begin-

(continued...)

37 (LexisNexis Supp. 2011) (current version at *id.* (LexisNexis Supp. 2012)) (providing minimum guidelines for visitation when one parent moves more than 150 miles from the residence identified in the divorce decree).

## C. Contempt

¶9    Husband sought to have Wife held in contempt for failing to make a full mortgage payment in May 2011. Husband alleged that Wife deliberately failed to seek suitable work in Utah. He further asserted that Wife had not demonstrated why she could not manage mortgage payments totaling $2,800 when his alimony payments had been increased to $4,000 a month for the purpose of assisting Wife to remain in the home with the son. The commissioner, for reasons that he did not explain, did not certify or otherwise make a recommendation on the issue of contempt to the district court.

## D. Other Issues

¶10    The commissioner reserved for trial Husband's request to reduce his alimony obligation, explaining that it did not have authority under rule 106 to reduce alimony pending resolution of the petition to modify. The commissioner also recommended that the parties bear their own attorney fees. This recommendation was based on the court's conclusion that neither party had acted in bad faith because the situation "wasn't contemplated in the decree and something needs to be done now" to accommodate Wife's inability to find appropriate work.

---

[2](...continued)
ning in fall 2011 would adhere to the statutory schedule. The recommended deviation from the statutory minimum for parent-time is not significant to the issues presented for review.

E. Husband's Objection to the Commissioner's Recommendations

¶11     Following the hearing, Husband filed a written objection to the commissioner's recommendations in the district court, in accordance with rule 101(k) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 101(k) (explaining the procedure for "[o]bject[ing] to court commissioner's recommendation").[3] The objection essentially reiterated the arguments Husband made at the hearing. In addition, regarding the home, Husband expressed concern that the commissioner had not included a third option—provided in the divorce decree—that would have allowed him to buy out Wife's equitable interest as an alternative to either requiring Husband to sell or allowing Wife to rent the home to cover her mortgage payment obligation. In response to the commissioner's order that he choose within fifteen days to either put the house up for sale or allow it to be rented by Wife, Husband filed a "Notice of Election Under Protest," in which he "renew[ed] his objection that the [commissioner] had no power to force [him] to accelerate the terms of the" decree but nevertheless "elect[ed] to list the property for sale, under the understanding that [Wife] is still liable to pay the mortgages until such time as the property is sold." Husband requested an evidentiary hearing to determine who would be responsible for payment of the mortgages if the property was listed for sale and to address his concerns about the commissioner's authority to accelerate the divorce decree's sale option while effectively abrogating Husband's option under the decree to simply buy out Wife's interest. An objection hearing was scheduled before the district court.

---

[3]As of April 1, 2012, subsection (k) has been removed from rule 101 and has been made a separate rule, rule 108. *See* Utah R. Civ. P. 108 ("Objection to Court Commissioner's Recommendation.").

## II. The District Court Proceedings

¶12    Husband brought witnesses to the objection hearing based on his "understanding that [the parties] were going to present evidence . . . as well as oral argument." He admitted, however, that he had not presented any of the evidence that he now wished to present at the objection hearing at the hearing before the commissioner, by proffer or otherwise. The district court denied Husband's request to put on witnesses, explaining that the parties should "bring issues before the commissioner[ on which] the commissioner makes recommendations" because the district court is not a forum where a party may "bring in new things that were not considered by the commissioner." The court explained that to do otherwise "would be inappropriate and contrary to the whole idea of having commissioners," and proceeded on the arguments of counsel.

¶13    The district court decided to enforce Husband's earlier election to accelerate the sale of the home and ordered Husband to assume responsibility for the mortgage payments until a sale occurred. The court also adopted the commissioner's recommendation that the son be permitted to relocate to Virginia with Wife and ordered parent-time for Husband that corresponded with the GAL's recommendation. The court subsequently determined that parent-time during the summer of 2011 was not in the son's best interest and ordered the parties to work with a therapist in Virginia to develop a parent-time schedule moving forward. The court declined to rule on Husband's request to hold Wife in contempt for failure to pay the mortgages because the commissioner had not certified the issue. The court agreed with the commissioner's recommendation to reserve decision on the request to modify alimony until trial and indicated that, at that time, Husband could seek reimbursement of any expenses he had incurred in the interim for maintaining the home, paying the mortgages, and marketing the home for sale. The court awarded Wife $6,000 in attorney fees. Husband appeals from the district

court's orders regarding the home and mortgage payments, parent-time, and contempt.

ISSUES AND STANDARDS OF REVIEW

¶14 "A trial court's resolution of a party's objection to the recommendation of a commissioner is one of law. We review conclusions of law for correctness." *Dent v. Dent*, 870 P.2d 280, 282 (Utah Ct. App. 1994). We review the subsidiary determinations necessary to that resolution according to the standard appropriate to the issue.

¶15 Husband first contends that the shift in responsibility for the mortgage payments and upkeep of the house constituted a modification of the divorce decree that cannot be made under the limited temporary order authority granted to the court by rule 106(b) of the Utah Rules of Civil Procedure but instead may only be made following an evidentiary hearing, essentially a trial. "Interpretation of a rule of procedure is a question of law that we review for correctness." *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035.

¶16 Husband next appeals from the district court's order allowing Wife to move with the son to Virginia on the basis that the decision was made without a showing of immediate and irreparable harm and without allowing Husband an evidentiary hearing at which Husband could have demonstrated that there would be no such harm and that the move was not in the son's best interest. Husband's argument is rooted in rule 106 of the Utah Rules of Civil Procedure. Wife asserts that relocation of a minor child is governed by Utah Code section 30-3-37. The applicability of a particular rule or statute is a question of law reviewed for correctness. *Cf. Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 11, 156 P.3d 806 (explaining that the applicability of the statute of limitations and the discovery rule are questions of law). We review the district court's refusal to allow Husband to

present a witness on this issue for abuse of discretion. *See Olson v. Olson*, 2010 UT App 22, ¶ 10, 226 P.3d 751.

¶17    Finally, Husband argues that the district court improperly declined to consider the contempt issue. When a party requests that the district court consider an issue that has been reserved, we will consider whether the court abused its discretion in granting or denying that request. *See generally A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 11, 977 P.2d 518 ("Trial courts have broad discretion in managing the cases before them and we will not interfere with their decisions absent an abuse of discretion.").


ANALYSIS

I. Sale of the Property and Transfer of the Mortgage Obligation

A. The Issue Is Not Moot.

¶18    According to Wife, Husband's challenge to the court's order that the house be listed for sale and that Husband bear responsibility for paying the mortgages until it is sold presents a preliminary question of mootness because the divorce decree provides that Husband was to make an election to sell the home or buy out Wife's interest by July 2012, a deadline that has since passed.[4] An issue is "moot when the requested judicial relief cannot affect the rights of the litigants." *See Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989). We conclude that the expiration of the

---

    [4]The divorce decree actually requires Husband to make an election "[w]ithin six (6) months prior to January 22, 2013." (Emphasis added.) For purposes of addressing the mootness question, we accept Wife's contention that "[w]ithin" means by July 2012 "at the latest."

election deadline does not moot the property disposition issue for two reasons.

¶19    First, the commissioner limited Husband's choices to allowing Wife to rent out the property or listing the home for sale, and the district court accepted Husband's subsequent election (under protest) to sell the home. Neither the commissioner nor the court provided Husband with an option that was available to him under the divorce decree, namely, to simply buy out Wife's equitable interest. Second, the divorce decree implies that Wife was to maintain the mortgage payments until the property was either sold or Husband purchased her interest because it permits Wife to seek "reimburse[ment for] all principal payments that she pays on the first and second mortgage payments on the home from January 22, 2008 up to the date of the sale of this home or the refinancing as elected by [Husband]." In other words, despite Husband's election deadline of July 2012, Wife was responsible for the mortgage payments until *at least* January 2013, and perhaps beyond, if Husband elected to sell and the sale did not occur immediately. Yet the district court transferred the mortgage obligation to Husband, effective July 2011.

¶20    Husband has requested that we reverse the court's order regarding the property division and remand for an evidentiary hearing in accordance with established divorce decree modification procedures. Such a hearing would permit the parties the opportunity to present evidence relevant to whether there were compelling reasons arising from a material change in circumstances not contemplated by the decree and provide the court with a basis for determining whether modification was indeed in order. *See generally Whitehouse v. Whitehouse*, 790 P.2d 57, 61 (Utah Ct. App. 1990) ("[M]odifications in a decree of divorce affecting the disposition of real property are to be granted only upon a showing of compelling reasons arising from a substantial and material change in circumstances." (emphasis, citation, and internal quotation marks omitted)). Because Husband's requested relief may affect his rights in the property and/or other claims under the

divorce decree, resolution of the issue may still have an effect on the outcome and therefore the issue is not moot. *See Burkett*, 773 P.2d at 44.

B. Husband Is Entitled to an Evidentiary Hearing on the Disposition of the Home.

¶21    We next address whether Husband is entitled to an evidentiary hearing on the disposition of the home. Rule 106 of the Utah Rules of Civil Procedure provides that "proceedings to modify a divorce decree . . . shall be commenced by filing a petition to modify." Utah R. Civ. P. 106(a). "[A] party requesting that a divorce decree be modified must demonstrate that there has been a substantial change of circumstances occurring since the entry of the decree and not contemplated in the decree itself." *Whitehouse*, 790 P.2d at 61 (citation and internal quotation marks omitted). With regard to a divorce decree's division of the parties' property, we have noted that courts should modify such provisions "with great reluctance" and "only upon a showing of compelling reasons arising from a substantial and material change in circumstances." *Id.* (emphasis, citation, and internal quotation marks omitted).

¶22    The divorce decree, prompted at least in significant part by the son's ongoing special needs, provides for Wife to remain in the home for a period of five years beginning in January 2008. It then gives Husband certain alternatives for paying off Wife's equitable interest at the end of that period. The decree does not address the possibility of an interim contingency that might disrupt the decree's simple five-year plan. Indeed, Wife's attorney conceded before the commissioner that "there's nothing in the decree that deals with th[e] scenario of an early departure from the home." The commissioner agreed, explaining that "this eventuality simply wasn't contemplated in the decree" but that "something needs to be done now." The commissioner then made his recommendation that Husband choose between selling the home and allowing Wife to rent out the property, not based on the terms of the divorce decree, but rather because he "c[ould]n't find anything in the

decree that would not allow [Wife] th[e] opportunity" to rent the property.

¶23    That the circumstances—Wife's leaving the home before the end of the five years—were not contemplated at the time of the divorce decree seems to be undisputed by the parties. But we are not persuaded that because the decree did not address the issue, Wife was simply entitled to rent out the property. Rather, once a change in circumstances not contemplated by the decree was established, the commissioner's task moved out of the realm of interpreting the divorce decree, *see Osborne v. Osborne*, 2011 UT App 150, ¶ 6, 260 P.3d 202 (explaining that a divorce decree ought to be interpreted according to the parties' intent as evidenced by the language of the decree), and into an inquiry into whether the change in circumstances was sufficiently material and substantial to require modification of the decree's terms, *Whitehouse*, 790 P.2d at 61 (explaining that once a change in circumstances not contemplated by the divorce decree has been established, the legal inquiry turns to whether there are "compelling reasons arising from [the] substantial and material change in circumstances" to warrant modifying the decree (emphasis, citation, and internal quotation marks omitted)). Thus, whether Wife should be permitted to rent the home to defray the mortgage expense when she is not occupying it or whether Husband's options, exercisable under the decree only at the end of the five-year period, ought to be changed or accelerated are questions that must be resolved at an evidentiary hearing typical of modification proceedings and seem to require something more rigorous than the simple contract interpretation approach employed here.

¶24    But until that determination is made, the "decree sought to be modified remains in effect." Utah R. Civ. P. 106(b)(1). In other words, at least under rule 106, which was the rule relied on by the parties, the court cannot modify the real property division prior to an evidentiary hearing unless there are no material facts at issue, which does not appear to be the case here. *See generally id.* R. 106(b)(1)(B) (explaining that the court may temporarily modify

child support, custody, or parent-time during the pendency of a modification proceeding to address "an immediate and irreparable harm" but carving out no such exception for property distribution).[5]

¶25   We therefore vacate the court's ruling ordering Husband to place the home for sale and to assume responsibility for the mortgage payments, maintenance, and upkeep. We remand for a hearing, at which time evidence may be presented on the question of whether there are "compelling reasons arising from a substantial and material change in circumstances" that make modification of the decree's treatment of the house appropriate. *See Whitehouse v. Whitehouse*, 790 P.2d 57, 61 (Utah Ct. App. 1990) (emphasis, citation, and internal quotation marks omitted). Whether Husband is entitled to reimbursement for the expenses he has incurred in maintaining the home since the July 2011 order has been reserved by the district court for later resolution and might properly be considered in conjunction with the evidentiary hearing on modification. At that hearing, Husband may offer any evidence, legal authority, and arguments regarding the legal and factual effect of that evidence or legal authority that he thinks beneficial to his claims on this issue, including his contention that the facts give rise to contractual remedies.[6] The district court should consider the

---

[5]The parties have addressed the issue of temporary orders in the context of a modification proceeding only under the authority of rule 106. We therefore do not reach the issue of whether a divorce court might have the authority under its continuing jurisdiction and broad equitable powers to fashion temporary solutions to circumstances that appear to require immediate attention, even though the circumstances have arisen in the context of a modification proceeding.

[6]In his appellate briefing, Husband argues that the district court did not consider the "authorities" he presented. It is not

(continued...)

applicability and merits of these arguments at that time, and it is not appropriate for this court to do so in the first instance.

## II. Wife's Relocation

¶26 Husband next challenges the district court's adoption of the commissioner's recommendation that Wife be allowed to relocate with their son. In particular, Husband complains that Wife failed to demonstrate the "immediate and irreparable harm" that rule 106 requires to justify temporary modification of the parent-time arrangement and that he was denied an evidentiary hearing, at which he would have presented evidence that there was no such harm and that it was in the son's interest to stay in Utah. *See* Utah R. Civ. P. 106(b)(1)(B).

¶27 The district court, however, did not analyze Wife's intention to move with the son under rule 106 but instead conducted an analysis under Utah Code section 30-3-37 (the Relocation Statute). Rule 106 governs temporary orders regarding emergency adjustments of parent-time while a motion to modify a decree is pending. *See id.* In other words, rule 106 applies only if one party is seeking to modify the existing custody or parent-time provisions of a decree. Permanent orders addressing the relocation of one parent, on the other hand, are governed by the Relocation Statute. The Relocation Statute defines relocation as "moving 150 miles or more from the residence specified in the court's decree." Utah Code Ann. § 30-3-37(1) (LexisNexis Supp. 2011) (current version at *id.* (LexisNexis Supp. 2012)). Upon receiving a motion to modify a

---

[6](...continued)

apparent from his brief whether he is using "authorities" to refer to legal precedent or to certain evidence that the district court excluded because it had not been presented to the commissioner. We need not resolve this issue, however, because Husband will have a new opportunity to present his evidence and any relevant legal authority at the evidentiary hearing on remand.

parent-time arrangement due to one parent's intention to relocate, the court "may . . . schedule a hearing . . . to review the notice of relocation," *id.* § 30-3-37(3), and must "make appropriate orders regarding the parent-time and costs for parent-time transportation," *id.* § 30-3-37(3)–(5). In making these determinations, the court must consider a number of factors, including "the reason for the parent's relocation," "the additional costs or difficulty to both parents in exercising parent-time," and "other factors the court considers necessary and relevant." *Id.* § 30-3-37(4)–(5). A natural concern often raised at this hearing is whether relocation is in the best interest of the child.[7] If the court determines that relocation is appropriate, the court must then adjust parent-time, taking into account the presumptive minimum parent-time schedule the statute provides. *Id.* § 30-3-37(5).

¶28 In this case, upon receiving Husband's objection to Wife's plan to move with the son, the district court held a hearing at which it conducted an appropriate best interest analysis as part of its consideration of Wife's proposed move under the Relocation Statute. The court considered the commissioner's recommendation

---

[7]The 2012 version of the Relocation Statute specifically identifies the "best interest of the child" as a primary factor in determining whether relocation is appropriate. Utah Code Ann. § 30-3-37(3)–(5) (LexisNexis Supp. 2012). The 2011 version, which was in effect at the time of these proceedings, does not specifically identify the child's best interest as a factor in considering an objection to a relocation request, but it did require the court to consider "other factors" that are "necessary and relevant" to making an appropriate order regarding parent-time arrangements when the custodial parent relocates. *See id.* § 30-3-37(3)–(4) (LexisNexis Supp. 2011). The best interest of the child is ordinarily implicated by any proceeding involving custody and parent-time, including a proposed relocation of the custodial parent. *See generally Grindstaff v. Grindstaff*, 2010 UT App 261, ¶ 4, 241 P.3d 365.

that the son be allowed to move to Virginia and that parent-time be arranged according to the schedule in the Relocation Statute with an adjustment for the upcoming summer when Husband would have the son for three weeks, rather than the prescribed one-half of summer vacation. *See generally id.* § 30-3-37(6)(c). The court also heard from the GAL and Husband's counsel that such an arrangement would be in the son's best interest and accorded with Husband's desire to parent the son. The court then considered the feasibility of such an arrangement and determined that Husband's employment with a commercial airline would facilitate the son's transportation between his parents. When the son, who was then sixteen, refused to cooperate with the parent-time arrangement, the court interviewed him in person and amended the order, explaining that "it would not be in [the son's] best interest at this time . . . [to] visit with [Husband]." The court ordered, however, that Husband be permitted to participate in the son's counseling, with the goal of reinstating statutory parent-time.

¶29 Because Husband's briefing focuses on the propriety of the court's order under rule 106, not the Relocation Statute, he has failed to adequately challenge the basis of the court's decision. *See Benns v. Career Serv. Review Office*, 2011 UT App 362, ¶ 2, 264 P.3d 563 (per curiam) ("If an appellant does not challenge the lower court's basis for its judgment, the lower court's determination is placed beyond the reach of further appellate review . . . ."). In particular, he has failed to demonstrate that there was any error in the court's best interest evaluation and subsequent order under the Relocation Statute. We therefore will not disturb the court's order on the basis that it failed to comply with the standards contained in rule 106 for temporary orders in modification proceedings.

¶30 Husband also takes issue with the court's failure to grant his request for an evidentiary hearing on the relocation issue. Husband's argument on this issue is contained in only three paragraphs of his forty-nine-page brief and asserts that it was an abuse of discretion for the court not to hold such a hearing when, during the commissioner proceeding, he and Wife had expressed

competing views on whether moving to Virginia was in the son's best interest.

¶31    Husband's argument is based on two cases that he claims support his position, but he identifies the cases without page citations or any description or analysis of their facts or holdings. *See* Utah R. App. P. 24(a)(9) (requiring an appellant to give "contentions and reasons" for his or her position that are supported by specific citation to pertinent legal authority); *Morford v. Division of Child & Family Servs.*, 2010 UT App 285, ¶ 11, 241 P.3d 1213 (explaining that appellate courts will not consider arguments that "consist[] of nothing more than bald citations to authority without any development of that authority [or] reasoned analysis based on that authority" (second alteration in original) (citation and internal quotation marks omitted)). Even if the briefing were more robust, however, under the particular circumstances of this case, we would conclude that the court did not err.

¶32    At the commissioner proceeding, Husband did not proffer any witness testimony or call any witnesses to testify regarding the son's best interest. Husband attributed this to Wife's delay in responding to his countermotion, explaining that because Wife did not file her response until two days prior to the hearing before the commissioner, he "didn't have a chance to follow-up with" certain persons who had evaluated the son and who may have been able to establish that moving to Virginia was not in the son's best interest. Husband orally requested a continuance to supplement the record with documentation from the son's therapist and to allow him an opportunity to interview a second potential witness, whose profession and experience with the son were never disclosed at the hearing. Wife opposed the continuance, denying that her delay contributed to Husband's lack of preparation; she asserted, rather, that Husband had not made any effort to communicate with the therapist and had canceled a previously scheduled deposition with the second witness. The commissioner did not rule on Husband's motion for a continuance at the time it

was made, and Husband did not raise that issue again once the parties went on to address the merits.

¶33 Husband then requested an evidentiary hearing in conjunction with his written objection to the commissioner's recommendations. However, the subject of the hearing he requested was not the relocation issue but the commissioner's real property recommendation, specifically the issue of who would be responsible for payment of the mortgages if the property were listed for sale and Husband's concerns about the commissioner's authority to accelerate the divorce decree's sale option while effectively abrogating Husband's option under the decree to simply buy out Wife's interest. In the end, the court did not grant the evidentiary hearing that Husband had requested in his motion; nonetheless, Husband brought witnesses to the objection hearing. Husband's witnesses included not only witnesses on the property issues he had identified in the request for an evidentiary hearing but also his sister, who he represented as an expert in speech pathology prepared to testify that the Utah schools were better equipped to handle the son's needs than Virginia's schools. Wife objected to Husband's proposed witness on the relocation issue on two bases. First, she asserted that "[t]he whole request for an evidentiary hearing to present . . . new evidence that was not before the commissioner is contrary to the whole recommendation process of matters and motions and counter motions to be heard by the commissioner." Second, Wife asserted that the witness, Husband's sister, had not seen the son for four years and had not been shown to be professionally qualified to address the son's special needs. The district court sustained that objection, declining to hear from Husband's relocation witness because Husband proposed to present evidence that he had not presented to the commissioner.[8]

---

[8]The Utah Supreme Court has since adopted rule 108 of the Utah Rules of Civil Procedure to regularize the process for objecting to recommendations by a domestic relations

(continued...)

¶34 We affirm the district court's ruling because, under the totality of the circumstances, we are not convinced that the district court abused its discretion in declining to hear Husband's newly-disclosed witness. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 (allowing an appellate court to affirm on any basis apparent in the record). Husband had not offered to present the testimony of any relocation witness at the hearing before the commissioner, and when he requested an evidentiary hearing in his objection, he identified only the real property issue and had failed to mention the relocation issue as the subject of the request. In addition, Husband had not previously identified to the court or to Wife the proposed expert witness he produced at the time of the hearing, he had not submitted her curriculum vitae or resume, and the witness had apparently not seen or evaluated the son in four years. Further, Husband did not identify his unresolved request for a continuance of the commissioner hearing to obtain testimony on this topic as a basis for his request to present his proposed witness during the objection hearing.

¶35 Thus, while we recognize that ordinarily an evidentiary hearing is the preferred mechanism for resolving disputes about the best interest of a child, *see, e.g.*, *Montano v. Third Dist. Court for Cnty. of Salt Lake*, 934 P.2d 1156, 1157 (Utah Ct. App. 1997), under

---

[8](...continued)
commissioner in the district court. According to rule 108, "any evidence, whether by proffer, testimony or exhibit, not presented to the commissioner[,] shall not be presented to the judge" unless the offering party can demonstrate that "there has been a substantial change of circumstances since the commissioner's recommendation," in which case the court "may, in the interests of judicial economy, consider new evidence." Utah R. Civ. P. 108(c). The court's rationale for declining to hear Husband's witnesses seems to track the provisions of the new rule, but because rule 108 was not in effect at the time of these proceedings, we apply the abuse of discretion standard.

the particular circumstances of this case, Husband has failed to persuade us that the district court abused its discretion by declining to hear witness testimony on the relocation issue for the first time at the objection hearing.[9]

¶36 In summary, Husband has neither addressed the basis of the district court's ruling regarding Wife's relocation nor convinced us that the district court abused its discretion in declining to hold an evidentiary hearing. We therefore affirm the court's relocation order.

### III. Contempt

¶37 Finally, Husband challenges the district court's refusal to consider his contempt claim against Wife. Husband explains that he "provid[ed] an affidavit . . . that [Wife] had failed to make the

---

[9]The circumstances here were unusual and have further evolved since the objection hearing. At the time of the hearing before the judge in July 2011, Husband had not visited with the son since November 2009 per the parties' stipulation. And shortly after the court's approval of the commissioner's recommendation that Wife and son be allowed to relocate to Virginia and that Husband's parent-time be reinstated, the son refused to visit with his father. After a subsequent hearing, the court determined that visitation was not in the son's best interest at that time and advised the parties to work with the son's therapist in Virginia in an attempt to rebuild their relationship so that parent-time might resume in the future. Although neither the record nor the briefing include the outcome of the parties' efforts with the Virginia therapist to reestablish parent-time, it is apparent that Husband had not had parent-time with the son for a considerable amount of time when the appeal was filed. Further, the son has now resided and attended school in Virginia for more than a year and a half and is approaching the age of majority.

May, 2011 payment on the first mortgage" and that Wife admitted that she had failed to do so, but the commissioner nevertheless declined to certify it and instead "reserved" the issue. Husband objected to the commissioner's decision not to certify, arguing that he had established Wife's contempt. The district court refused to consider contempt because the issue had not been certified. Husband now contends that because he raised an objection to the commissioner's recommendation, "the [district c]ourt was under a duty to consider the merits of his objection, regardless of whether the [c]ommissioner had certified the issue or not."

¶38    Rule 6-401 of the Code of Judicial Administration defines the parameters of a domestic relations commissioner's powers and responsibilities. Among other things, a commissioner has the duty to "conduct hearings with parties and their counsel for the purpose of submitting recommendations to the parties and the court." Utah R. Jud. Admin. 6-401(3)(C). The commissioner is then required to "make recommendations on all issues under consideration at the pretrial [hearing] and submit those recommendations to the district court." *Id.* R. 6-401(2)(K); *see also id.* R. 6-401(2)(D) ("Court commissioners shall have the following authority: . . . Make recommendations to the court regarding any issue . . . in domestic relations . . . cases at any stage of the proceedings."). In addition, should the commissioner determine that a matter "appear[s] to require a hearing before the district court judge," he or she has the authority and the duty to "[c]ertify those cases directly to the district court" for resolution. *Id.* R. 6-401(3)(B). Thus, a commissioner is generally required either to consider an issue and make a recommendation to the district court as to how it should be resolved or to certify the issue directly to the court for resolution.

¶39    Here, the commissioner neither ruled on the issue of Wife's alleged contempt nor certified it to the court for resolution but reserved his decision without explaining the reasons for doing so. It is certainly within the discretion of a judge or commissioner to postpone the decision on an issue when it is reasonable to do so, for example where the best decision requires additional evidence or

resolution reasonably depends on yet unresolved or developing circumstances. *See A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 11, 977 P.2d 518 ("Trial courts have broad discretion in managing the cases before them and we will not interfere with their decisions absent an abuse of discretion."); *Black's Law Dictionary* 11 (9th ed. 2009) (explaining that a court abuses its discretion only when it fails "to exercise sound, reasonable, and legal decision-making"). Such discretion is necessary to informed and effective judicial decision-making at both the commissioner and the district court levels. District courts likewise have discretion to consider issues upon which a commissioner's decision has previously been reserved in order to expeditiously move cases through the court system. *See A.K. & R. Whipple Plumbing & Heating*, 1999 UT App 87, ¶ 11; *cf. Pitt v. Taron*, 2009 UT App 113, ¶ 5, 210 P.3d 962 ("[T]he trial court is responsible for carrying [the trial] forward as efficiently and expeditiously as possible consistent with fairness and thoroughness in administering justice." (second alteration in original) (citation and internal quotation marks omitted)). But while a district court has the discretion to consider an issue that has not been certified, Husband has provided us with no authority for the proposition that a court is required to do so.

¶40    Instead, if Husband believed that the commissioner had no reasonable basis for reserving decision on the contempt issue, then his remedy was to ask the judge to order the commissioner to make a recommendation on contempt, to certify the issue to the district court, or to explain why reserving decision was appropriate. Husband could request, but not demand, that the court consider the issue in the first instance. We therefore affirm the court's decision to decline to consider the non-certified issue of contempt.

IV. Attorney Fees

¶41    Husband requests attorney fees pursuant to Utah Code section 30-3-3 on the real property modification issue. *See Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct. App. 1998) (explaining that Utah

Code section 30-3-3 permits the district court to award attorney fees in a modification proceeding). It is not appropriate for us to consider a fee award at this stage of the proceedings, however, when we are remanding the issue for further consideration and neither party has yet prevailed on the merits. Rather, the district court may consider the attorney fees issue on remand. *See generally id.* (requiring the award of attorney fees in a modification proceeding to "be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees" (citation and internal quotation marks omitted)). In so doing, the court may adjust the amount previously awarded to Wife as appropriate.

¶42    Wife requests an award of the attorney fees she incurred on appeal. "In divorce actions where the trial court has awarded attorney fees and the receiving spouse [prevails] on the main issues, we generally award fees on appeal." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 11, 176 P.3d 476 (alteration in original) (citation and internal quotation marks omitted). We deny Wife's request in this instance, however, because we cannot conclude that Wife is the prevailing party on the main issues on appeal. Rather, Wife prevailed on the relocation issue while Husband succeeded on his claim to an evidentiary hearing to determine whether modification of the decree's treatment of the house is appropriate. The orders on the house and the relocation are the primary issues raised on appeal, and each claim seems to carry the same relative significance when viewed in the totality of what each party was seeking. We therefore conclude that the comparative result was essentially a draw. *See Olsen v. Lund*, 2010 UT App 353, ¶ 12, 246 P.3d 521 (explaining that a party prevails for purposes of receiving attorney fees only when that "party has attained a comparative victory, considering what a total victory would have meant for each party and what a true draw would look like" (citation and internal quotation marks omitted)). As a result, we decline to make an award of fees.

CONCLUSION

¶43    We reverse and remand for appropriate modification proceedings in accordance with this decision. We affirm the order with regard to parent-time and contempt. Following the modification hearing, the district court may award attorney fees on the home disposition issue as appropriate. Wife's request for attorney fees on appeal is denied.

———————

DAVIS, Judge (dissenting in part and concurring in part):

¶44    I respectfully dissent from Section II of the majority opinion and concur as to all other sections. Although the district courts "have broad discretion in managing the cases before them," *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 11, 977 P.2d 518, I believe it was nonetheless inappropriate for the district court here to refuse Husband an evidentiary hearing on preservation grounds. The relationship between court commissioners and district courts is not, and never was intended to be, similar to the relationship between the district courts and appellate courts.[10] *Cf. State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."); *In re M.S.*, 781 P.2d 1289, 1290–91 (Utah Ct. App. 1989) (explaining, in an appeal from the juvenile court's de novo review of the juvenile commissioner's decision, that raising an argument before the juvenile commissioner did not preserve it

———————

[10]Notwithstanding the majority's effort to justify its ruling, the *only* reason the district court denied Husband an evidentiary hearing was Husband's failure to first mention the evidence to the commissioner. The district court explained that litigants cannot "bring in new [evidence] that [was] not considered by the commissioner" because to allow otherwise "would be inappropriate and contrary to the whole idea of having commissioners."

for appellate review because the argument was not reasserted, and therefore not preserved, at the juvenile court level).

¶45 Court commissioners are court employees that fill the important role of "assist[ing] the judiciary in the exercise of its judicial power," which undoubtedly increases the efficiency and effectiveness of the judicial process. *See Holm v. Smilowitz*, 840 P.2d 157, 167 (Utah Ct. App. 1992). A commissioner's authority is necessarily not as expansive as that of Article VIII judges, amounting to "[t]he differentiation . . . between adjunct fact finding and plenary judicial responsibility." *Id.* (internal quotation marks omitted); *see also* Utah Const. art. VIII, § 1; Utah Code Ann. § 30-3-15.3 (LexisNexis Supp. 2012); *id.* § 78A-5-107 (2012) (describing the functions and powers of domestic commissioners); *Salt Lake City v. Ohms*, 881 P.2d 844, 846–55 (Utah 1994) (analyzing the constitutionality of the court commissioner system). Regardless of whether it is appropriate or desirable to first present evidence to a commissioner, applying the preservation rule to the proceedings before a domestic relations commissioner impermissibly expands the function of the court commissioner system by barring litigants access to the court regardless of the merits of their cases. *Cf. BAC v. BLM*, 2001 WY 83, ¶ 15, 30 P.3d 573 ("[T]he district court [must] independently review[] the evidence and findings [submitted to a court commissioner] to reach its informed decision. This requirement is especially necessary in child custody cases because [t]he right to associate with one's immediate family is a fundamental liberty . . . . Accordingly, a court must afford a parent notice and a meaningful opportunity to be heard before it can deny the parent custody of his or her children. . . . [D]istrict courts . . . have no authority to abdicate their decision-making responsibilities on these fundamental issues to others." (fifth alteration in original) (emphasis, citations, and internal quotation marks omitted)).

¶46 Coincidentally, imposition of a preservation requirement in proceedings before the commissioner may negatively impact the system by requiring litigants to present every scrap of evidence to the commissioner or risk having that evidence rejected by a judge.

Because "[t]he people have a right to have their cases and controversies ultimately decided by . . . judges who have been vested with judicial power by the constitution," and "[a]nything less is a clear violation of the Utah constitution and Utah law," *Holm*, 840 P.2d at 168, I respectfully dissent from Section II of the majority opinion and would, on remand, direct the district court to hear Husband's evidence regarding the best interest issue.

————