IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Fred Danneman, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20100824-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 30, 2012) |
| Holly Danneman, | ) | |
| | ) | 2012 UT App 249 |
| Respondent and Appellant. | ) | |

-----

Fourth District, Provo Department, 044402147
The Honorable Lynn W. Davis

Attorneys:     Scott L. Wiggins, Salt Lake City, for Appellant
               David J. Hunter, Orem, for Appellee

-----

Before Judges Thorne, Roth, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Holly Danneman (Wife) appeals the district court's August 23, 2010 ruling and order (the August 2010 Ruling) overruling her objection to the domestic relations commissioner's dismissal of her motion to hold Fred Danneman (Husband) in contempt. We affirm and award Husband his attorney fees and costs reasonably incurred on appeal.

¶2     In January 2006, the district court issued an Amended Decree of Divorce ordering Husband and Wife to "share equally in the parties' right to future disbursements and revenues from the film *The Best Two Years*" (the Film). The Film was produced by Harvest Films, LC, a production company formed by Husband prior to the parties' divorce.

¶3    Thereafter, in June 2008, pursuant to a written agreement mediated by the parties and "intend[ed] to end all litigation between them from this date forward," the district court issued an order resolving several disputed issues (the 2008 Order).  Relevant to this appeal, the 2008 Order set forth the manner and method of the disbursements and accounting of the Film's revenues.  In relevant part, the 2008 Order states,

> [Husband] will give [Wife] an accounting and/or disbursement checks (if there are disbursement checks) within 60 days of receiving funds from Halestorm,[1] including a copy of the check from Halestorm received and an accounting of the expenses and disbursements as attached to this agreement.  [Husband] will request that Halestorm simultaneously send [Wife] copies of all checks when they are sent to Harvest Films.  Both parties will provide the other with K-1s as required by the Internal Revenue Service each year as soon as reasonably prepared.  [Husband] has no objection to [Wife] calling Halestorm directly.  [Husband] does not object to [Wife] calling other parties to verify his accounting or to make reasonable inquiries regarding Harvest Films and the disbursements related to *The Best Two Years*.

¶4    In 2009, Wife filed a motion for an order to show cause, requesting that Husband be held in contempt of court for his alleged failure to comply with the provisions of the 2008 Order.  Wife filed an affidavit and exhibits to support her challenges to the amount of the Film disbursements she had received and to the sufficiency and accuracy of Husband's accounting.  In response, Husband filed an affidavit, along with numerous exhibits of his own, responding to Wife's allegations and asserting that pursuant to the 2008 Order, he had paid and properly accounted for all funds due to Wife.  Additionally, Husband requested attorney fees incurred in responding to Wife's repeated and "groundless accusation[s]."

---

[1]Throughout the record, the parties refer to the Film's distributor by a variety of different names:  Halestorm Entertainment, Halestorm, Hale Storm, HaleStone Distribution, Hailstorm, and Hailstone.  Consistent with the 2008 Order, we refer to the Film's distributor as Halestorm.

¶5     After issuing an order to show cause and holding a hearing, the domestic relations commissioner issued its March 23, 2010 recommendation denying Wife's request to find Husband in contempt (the March 2010 Recommendation).  In reliance upon the documentation submitted in conjunction with the parties' order to show cause affidavits, the commissioner concluded that Husband "substantially complied" with the court's 2008 Order and that all financial issues previously determined were "res judicata" and would not be relitigated.[2]  The commissioner recommended denying attorney fees and costs for both parties.

¶6     Both Husband and Wife filed written objections to the commissioner's recommendation.  After oral argument, the district court issued its August 2010 Ruling affirming the commissioner's recommendation and ordering Wife to pay $500 in attorney fees.

¶7     On appeal, Wife asserts four challenges to the district court's August 2010 ruling.  First, Wife challenges the district court's dismissal of her objection to the

---

[2]In the March 2010 Recommendation, the commissioner utilizes the term "res judicata" to indicate a general unwillingness to revisit issues previously addressed by the court.  Given the posture of the case, we suggest that the law of the case doctrine more aptly defines the commissioner's conclusion.  "Under the law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation."  *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (internal quotation marks omitted).  While both law of the case and res judicata operate to promote judicial economy, *see Gillmore v. Wright*, 850 P.2d 431, 439 (Utah 1993) (Orme, J., concurring) ("The law of the case doctrine is not a limit on judicial power, but only a practice designed 'to protect both court and parties against the burdens of repeated reargument by indefatigable diehards.'" (quoting 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4478, at 789–90 (1981))), a key difference is that the law of the case doctrine applies to issues within a single lawsuit while res judicata applies to issues in separate cases.  *See IHC,* 2008 UT 73, ¶ 26.  Furthermore, in these circumstances, neither res judicata nor the law of the case doctrine pertains to the revisiting of issues that should have been raised in a petition to modify.  *See infra* ¶ 9; *Smith v. Smith*, 793 P.2d 407, 410 (Utah Ct. App. 1990) (explaining that the court has continuing jurisdiction over domestic cases, including modifications of orders upon "a showing of a substantial or material change in circumstances").

commissioner's March 2010 Recommendation based upon the doctrine of res judicata.[3] Wife asserts that the court failed to recognize that her challenge to Husband's disbursements and accounting was a different claim not addressed or resolved by the 2008 Order and that the court failed to identify which branch of res judicata it relied upon in making its ruling.

¶8    At argument on the parties' objections to the commissioner's recommendations, the district court summarized Wife's disagreement with the court's refusal to address financial issues as (1) a failure to allow Wife to conduct "a reasonable inquiry into Harvest Films and the disbursements," (2) a failure to require Husband to provide "third-party support evidence" showing that expenses deducted from the disbursements were actually incurred, and (3) improperly allowing Husband to "take additional disbursements from the [Film's] revenues."  After considering Wife's objections, the district court concluded that Husband was not required to "account for every penny of revenue and disbursements that [is] in some way related to the [F]ilm" and that, consistent with the terms of the 2008 Order, Husband had "sufficiently responded" to all of Wife's financial inquiries.

¶9    At their core, Wife's arguments to the district court and on appeal ultimately evidence her dissatisfaction with the 2008 Order.  Wife essentially seeks to expand the scope and refashion the terms of the prior order that governs the manner and method of the parties' obligations.  The appropriate avenue for Wife to seek a modification of the

---

[3]At the outset, we note that it is incumbent upon the party filing the objection to the commissioner's recommendation, here, Wife, to state with particularity the objections to the recommendation.  *See* Utah R. Civ. P. 108(b) (requiring an objection to the commissioner's recommendation to specifically identify the "findings of fact, the conclusions of law, or the part of the recommendation to which the objection is made and state the relief sought").  A review of the record reveals that Wife did not submit any specific argument, evidence, or legal authority to the district court challenging the commissioner's purported misapplication of res judicata.  Accordingly, because the specific doctrine of res judicata was not raised, the district court did not use the term "res judicata" in either its 2008 Order or its August 2010 Ruling.  Instead, it was the commissioner, in his March 2010 Recommendation, who specifically used the legal term "res judicata."  Procedurally, the recommendation of a commissioner is only the order of the court until modified by the district court.  *See id.* R. 108(a).

2008 Order was not, however, through a motion for an order to show cause, *see* Utah R. Civ. P. 7(b)(2) (stating that an order to show cause "shall be made only for enforcement of an existing order or for sanctions for violating an existing order"), but through a petition to modify, *see* Utah Code Ann. § 30-3-5(3) (Supp. 2012) ("The court has continuing jurisdiction to make subsequent changes or new orders for the . . . distribution of the property and obligations for debts as is reasonable and necessary."). *See also Whitehouse v. Whitehouse,* 790 P.2d 57, 61 (Utah Ct. App. 1990) ("A court has continuing jurisdiction to modify a divorce decree."). A party requesting a modification of a court order concerning property must demonstrate "compelling reasons arising from a substantial and material change in circumstances." *Id.* (internal quotation marks omitted). Instead of seeking Husband's compliance with the 2008 Order, Wife essentially sought to modify the method and manner of the disbursements and accounting. Accordingly, because Wife's arguments were procedurally improper, we find it unnecessary to address the substance of her res judicata claim. *See supra* note 2.

¶10    Wife's second assertion on appeal is that the district court committed plain error when it placed the burden on Wife to prove that Husband was in contempt for violation of the 2008 Order.[4] "In order to demonstrate plain error, [Wife] must establish that (1) the district court erred, (2) the error should have been obvious to the district court, and (3) the error was harmful." *State v. Brooks*, 2012 UT App 34, ¶ 14, 271 P.3d 831. We need not reach the merits of Wife's burden of proof claim because she fails to establish that the court plainly erred.[5]

---

[4]Because Wife raises the burden of proof issue under a plain error standard, she is not required on appeal to show where she preserved this issue before the district court. *See generally State v. King,* 2006 UT 3, ¶ 13, 131 P.3d 202 (explaining that a party "who fails to preserve an objection at trial will not be able to raise that objection on appeal unless he is able to demonstrate either plain error or exceptional circumstances").

[5]The plain error standard of review is typically raised in the context of a criminal proceeding. Here, however, Wife asserts that the trial court plainly erred in a civil divorce case. Neither party has addressed whether the plain error doctrine applies in the context of a divorce or other civil proceeding. We recognize that it is generally unusual for a party to raise the plain error standard in a civil matter. *But see Nielsen v.*

(continued...)

¶11     In support of her motion for an order to show cause, Wife filed an affidavit and exhibits setting forth her claims as to why Husband was in contempt for violation of the 2008 Order.  Thereafter, the court issued an order to show cause requesting that Husband appear and show cause why he was not in contempt.  Prior to the order to show cause hearing, Husband filed his own affidavit and exhibits responding to Wife's allegations and showing that he was in compliance with the 2008 Order.  At the hearing, the commissioner "rel[ied] heavily" on the documents attached to Husband's affidavit in determining that Husband was not in contempt of court.[6]  In ruling on the parties' objections to the commissioner's recommendation, the district court concluded that, based upon Husband's exhibits and argument, Husband had substantially complied with the 2008 Order by providing Wife a sufficient accounting and appropriate disbursements as outlined in the order.

¶12     Wife's burden of proof argument stems from the commissioner's March 2010 Recommendation wherein the court stated that "[Wife] has not met her burden on her order to show cause issues."[7]  However, the district court's August 2010 Ruling makes

---

[5](...continued)
*Spencer,* 2008 UT App 375, ¶¶ 10, 14, 196 P.3d 616 (arguing that the district court committed plain error by submitting certain elements of a party's wrongful use of civil proceedings claim to the jury); *Richins v. Richins*, 2010 UT App 253U, at *2 (mem.) (claiming that the district court committed plain error when it equitably divided the marital property between Husband and Wife).  Because Husband does not challenge Wife's application of plain error in this case and because neither party has briefed the issue, we resolve the issue using the standard employed by Wife.

[6]In order for a party to be held in contempt for failure to comply with a court order, the court must find that "the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so."  *Von Hake v. Thomas* 759 P.2d 1162, 1172 (Utah 1988); *accord Thomas v. Thomas*, 569 P.2d 1119, 1121 (Utah 1977).

[7]In support of her burden of proof argument, Wife relies upon *Coleman v. Coleman,* 664 P.2d 1155 (Utah 1983) (per curiam), in which the Utah Supreme Court stated that in a civil contempt proceeding, "an order to show cause will not issue except

(continued...)

no similar statement regarding the placement of the burden of proof in proving contempt. Instead, the district court appropriately engaged in its own analysis of the exhibits and arguments to conclude that Husband complied with the 2008 Order. On appeal, Wife cannot rely upon the commissioner's March 2010 Recommendation to show any district court error since the commissioner's recommendation remained in place only until modified by the district court's August 2010 final ruling. *See* Utah R. Civ. P. 108(a). Under a plain error standard there must be some indication that an error actually occurred. *See State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (stating that to find plain error, an error must actually occur). Here, because there is no evidence that the district court incorrectly shifted the burden of proof as alleged, Wife cannot establish plain error.

¶13     Furthermore, even assuming for purposes of argument that there was some indication that the district court had erred, Wife fails to explain how, given the fact that Husband was ultimately found to *not* be in contempt, the hypothetical placement of the burden on Wife amounted to a harmful error. *See State v. Dean*, 2004 UT 63, ¶ 22, 95 P.3d 276 (defining "harmful" under a plain error standard as an error "of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the

---

[7](...continued)
upon an affidavit that a party has violated or disobeyed the court's orders, [but] once issued, the burden is on the defendant to present evidence with respect to the three elements [of contempt]." *Id.* at 1156-57 (holding that the husband had the burden of proof to show cause why he should not be held in contempt for failure to pay alimony). We find the facts and procedure of the case before us are distinguishable from *Coleman* in that, here, Husband is not attempting to defend his noncompliance with the 2008 Order based upon any inability to comply, as the husband in *Coleman* asserted. Asserting an inability to pay in the contempt context is much like asserting an affirmative defense and, thus, the burden is appropriately placed upon the party asserting such a defense. Here, rather than acknowledging that he failed to comply with the 2008 Order and defending his noncompliance by asserting financial inability, Husband argued that he complied with the terms of the 2008 Order and submitted supporting evidence to demonstrate his compliance. Thus, while Wife's allegation of contempt and supporting affidavit may have constituted prima facie evidence sufficient to justify the issuance of an order to show cause, the burden to prove noncompliance with the 2008 Order by clear and convincing evidence remained with Wife.

defendant" (internal quotation marks omitted)). Given that there is no indication that the district court committed any error, let alone harmful error, Wife's claim as to the burden of proof fails.

¶14    Third, Wife argues that the district court's August 2010 Ruling was not sufficiently detailed and failed to "include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." However, a party "'waive[s] any argument regarding whether the district court's findings of fact were sufficiently detailed' when the [party] fails to challenge the detail or adequacy of the findings with the district court." *In re K.F.*, 2009 UT 4, ¶ 60, 201 P.3d 985 (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801). Here, Wife failed to raise her challenge to the sufficiency of the detail in the findings before the district court, and therefore the issue was not preserved for appeal.

¶15    Finally, Wife contends that the trial court abused its discretion by relying upon "erroneous conclusions of law" to award Husband attorney fees in the amount of $500. Generally, "[w]e review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion." *Jensen v. Jensen*, 2008 UT App 392, ¶ 8, 197 P.3d 117; *see also Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476 ("Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." (internal quotation marks omitted)).

¶16    Utah Code section 30-3-3(2) governs the award of attorney fees in an action to enforce a divorce decree. It states,

> In any action to enforce an order of custody, parent-time, child support, alimony, or division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense. The court, in its discretion, may award no fees or limited fees against a party if the court finds the party is impecunious or enters in the record the reason for not awarding fees.

Utah Code Ann. § 30-3-3(2) (Supp. 2012).

¶17    Based on that provision, the district court properly awarded Husband attorney fees as the prevailing party in the enforcement action. Furthermore, in determining the amount of fees, the district court utilized the discretion it is afforded under the statute and awarded Husband limited fees in the amount of $500. The court explained that the basis for the fee amount was Wife's continued litigation of issues previously determined. Accordingly, we cannot say that the district court's fee award constitutes an abuse of discretion and we deny Wife's claim.

¶18    Husband also requests his attorney fees and costs incurred on appeal. "'[I]n divorce proceedings, when the trial court has awarded attorney fees below to the party who then prevails on the main issues on appeal, we generally award fees on appeal.'" *Wall v. Wall,* 2007 UT App 61, ¶ 26, 157 P.3d 341 (quoting *Childs v. Childs,* 967 P.2d 942, 947 (Utah Ct. App. 1998)); *see also Nelson v. Nelson*, 2004 UT App 254, ¶ 9, 97 P.3d 722. Because the district court awarded attorney fees and Husband has now prevailed on appeal, we award him his attorney fees and costs reasonably incurred on appeal. Consistent therewith, we remand to the district court for a determination of that amount.

_____
Michele M. Christiansen, Judge

-----

¶19    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge