**2019 UT App 212**

## THE UTAH COURT OF APPEALS

TED W. TRONSON,
Appellee,
*v.*
RYAN EAGAR, RYAN GARDNER,
JUDD SIMPSON, AND JAKE SIMPSON,
Appellants.

Opinion
No. 20180750-CA
Filed December 27, 2019

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 140401483

Stony V. Olsen, Attorney for Appellants

Justin D. Heideman and Justin R. Elswick, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES KATE APPLEBY and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     The district court entered summary judgment against four individuals—Ryan Eagar, Ryan Gardner, Judd Simpson, and Jake Simpson (collectively, Defendants)—after determining that they were all jointly and severally liable to Ted W. Tronson on a promissory note. Defendants appeal the district court's summary judgment ruling, but we find their arguments unpersuasive, and therefore affirm.

BACKGROUND[1]

¶2     In 2008, Defendants were in search of money to fund an "Internet marketing campaign." Tronson and Howard Nelson[2] agreed to lend Defendants money for that purpose, and on October 15, 2008, the two sides executed two documents that are at the center of this case: a Loan Agreement and a Promissory Note. The Loan Agreement defines "Lender" as Tronson and Nelson, in their individual capacities, and defines "Borrower" as Defendants,[3] in their individual capacities, although "Borrower's Firm" is defined as "Those Guys, LLC, a Nevada Company." The Loan Agreement states that "Lender agrees to [l]oan Borrower monies," in "one or more incremental disbursements," "to fund an ongoing Internet marketing campaign." Each

---

1. The facts set forth herein are largely undisputed. To the extent they are disputed, for the purposes of this appeal we view and describe the relevant facts in the light most favorable to the non-moving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (stating that, on appeal from a district court's summary judgment ruling, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party" (quotation simplified)).

2. The parties agree that Nelson has since assigned to Tronson his right to recover from Defendants. Accordingly, Nelson is not a party to this case, and Tronson was the only plaintiff before the district court and is the only appellee here.

3. Five individuals were listed as borrowers in the Loan Agreement, and only four of them are involved in this appeal. The borrower who is not involved in this appeal never answered Tronson's complaint, and therefore the district court entered judgment against him by default, and he has not appealed the judgment against him. For ease of reference, however, except where necessary for clarity, we sometimes refer to "borrowers" and "Defendants" interchangeably.

disbursement was to be "evidenced by a proper Promissory Note," which would require repayment of the principal loan amount, plus a "lender fee" of 25% of the loan amount. The Loan Agreement was executed by seven individuals (two individual lenders, and five individual borrowers), over signature lines listing them only by name; although "Those Guys, LLC" was listed as "Borrower's Firm" in the body of the document, no business entity was listed as a signatory to the Loan Agreement.

¶3 The Promissory Note, executed contemporaneously with the Loan Agreement, was signed by all five individual borrowers, over signature lines listing them only by name. It listed the "principal amount" as $25,000, but the "total amount" as $31,250, after accounting for the 25% lender fee dictated by the Loan Agreement. The funds were to be repaid in installments due over the next three months. The borrowers indicated that the promise to pay was made "[f]or value received."

¶4 However, payment of the $25,000 loan proceeds was not made by Tronson and Nelson directly, and was not paid to the borrowers individually. Instead, on October 16, 2008—the day after the documents were executed—a company controlled by Tronson and Nelson, known as Those Money Guys LLC, issued a $25,000 cashier's check payable to Those Guys LLC, the entity listed in the Loan Agreement as "Borrower's Firm." That same day, Those Guys LLC deposited the check into its bank account.

¶5 No individual or entity ever repaid any part of the loan; the record does not contain evidence of any loan repayment efforts made by Those Guys LLC or any of the individual borrowers, or evidence of any loan repayments received by Tronson, Nelson, or Those Money Guys LLC.

¶6 Nearly six years later, in October 2014, Tronson filed suit against all five of the individual borrowers, seeking judgment against them, "jointly and severally," for $31,250 "plus interest, attorney fees, and costs." The complaint's heading identified Justin Heideman of the law firm Heideman & Associates as the

only attorney representing Tronson. Tronson took a while to serve Defendants, prompting them to file a motion to dismiss, filed through a law firm appearing specially, contesting the propriety of service of process upon them. The district court, after oral argument, determined that Tronson "sufficiently served process on Defendants," and denied the motion to dismiss. Thereafter, the law firm that appeared specially to represent Defendants in connection with the motion to dismiss withdrew from representation.

¶7 After some procedural skirmishing, a different attorney—Stony V. Olsen, current counsel for Defendants—entered an appearance on behalf of Defendants[4] and filed an amended answer on their behalf. Around the same time that Olsen appeared on behalf of Defendants, a second attorney's name—Justin Elswick—began to appear on documents filed on behalf of Tronson. Elswick, like Heideman, is an attorney at Heideman & Associates. Over time, Elswick's name began to appear on both the heading as well as the signature block, where he identified himself as "[a]ttorney for Plaintiff Ted W. Tronson." Elswick did not file a formal notice of appearance until May 2017, after the court had granted summary judgment in Tronson's favor, although in April 2017—after his name had appeared on several papers filed with the court on Tronson's behalf—Elswick filed an affidavit attesting to some facts regarding proof of service on one of the borrowers, and in that affidavit stated, "I am counsel for the Plaintiff in the above-captioned case."

¶8 One day after Elswick filed his affidavit, Tronson filed a motion for summary judgment, seeking final judgment against Defendants in the amount of $31,250, "plus interest and all attorney fees and costs." The motion's heading identified

---

4. Olsen's appearance was on behalf of four of the five borrowers, the ones who are parties to this appeal. As noted, *supra* note 2, one of the borrowers did not answer the complaint.

Heideman and Elswick as "[a]ttorneys for Plaintiff Ted W. Tronson." The motion was signed by Elswick, the only attorney identified in the motion's signature block, which proclaimed Elswick to be "[a]ttorney for Plaintiff Ted W. Tronson."[5] The motion was accompanied by seven attachments, including sworn affidavits from Tronson and Nelson—who both averred that they had "issued a $25,000 cashier's check through [their] entity" to Defendants' entity, and that no repayment had been made—as well as the following additional exhibits: copies of the Loan Agreement and the Promissory Note; a copy of a stub from the $25,000 cashier's check sent from Those Money Guys LLC to Those Guys LLC; a copy of a bank statement from Those Guys LLC, demonstrating that the entity had deposited $25,000 into its bank account on October 16, 2008; and a proposed order granting the motion. The motion and its attachments were served upon Olsen through the electronic filing system. Defendants do not contest the fact that Olsen was served with a copy of the motion for summary judgment.

¶9 Despite being served with a copy of the motion, Defendants filed no timely response to it. Any timely response would have been due on May 12, 2017; four days later, Tronson filed a Request to Submit for Decision, informing the district court that the matter was ready for its decision, because "Defendants have not timely filed a response." Later that same day, the district court signed Tronson's proposed order, granting

---

5. Defendants allege in their brief that Elswick often filed documents—including the motion for summary judgment—through Heideman's electronic filing account, even though Elswick signed them. The record submitted to us, however, does not reveal whose electronic filing account was used to file particular documents. Therefore, even if we were to agree with Defendants that one attorney's use of another attorney's electronic filing account was problematic in this instance, we cannot discern, on this record, that any such thing happened here. We therefore do not consider this issue further.

the motion for summary judgment. The order proclaimed that Defendants had "not filed a response" to the motion, that the court had "reviewed [Tronson's] argument," was "advised in the premises," and was granting the motion "for good cause shown." The total amount of money awarded to Tronson was $64,014.61 (the principal loan amount, as well as lender fees, late fees and interest) plus "attorney's fees and costs" and post-judgment interest to be quantified later.

¶10 Entry of that order against them spurred Defendants into action. The very next day, Defendants filed both a belated opposition to Tronson's already-granted motion for summary judgment, as well as a motion asking the court to "deny or defer" the already-granted motion. Among other arguments, Defendants asserted that because they had not received the money in their individual capacities, they should not have to repay it in those capacities; any judgment should not be joint and several, because the Promissory Note was not an "instrument"; the Loan Agreement and Promissory Note were unconscionable; and any judgment should also include the fifth borrower who had not yet answered the complaint. A few weeks later, Defendants filed another motion, this one invoking rule 59 of the Utah Rules of Civil Procedure and asking the court to alter or amend its summary judgment ruling. In their rule 59 motion, Defendants asserted, among other things, that Tronson's motion for summary judgment had never truly been properly filed, because Elswick had not filed a formal notice of appearance until after the motion was granted. Nowhere in their filings did Defendants offer any justification for their failure to file a timely response to the summary judgment motion. Tronson opposed Defendants' motions, and filed a motion of his own to strike Defendants' belated response to the summary judgment motion.

¶11 The court heard oral argument on all of these motions, and denied Defendants' motions, including their rule 59 motion, thereby leaving the court's summary judgment order intact. In its written order, the court stated that "Rule 59 is not the proper

procedural vehicle for seeking to set aside" a summary judgment order, because "no trial occurred in this case."

¶12    Soon after the court's order denying their motions was entered, Defendants filed another motion, this time invoking rules 54(b) and 60(b) of the Utah Rules of Civil Procedure, and asking for relief from both the summary judgment order as well as the order denying their motions. In addition to making some of the same arguments from their previous motions, Defendants also argued that the court erred in concluding that rule 59 is inapplicable in cases in which no trial has occurred, and that it erred by granting summary judgment simply because the motion was unopposed. After full briefing and oral argument, the court denied this motion as well, stating in its written order that, "[e]ven assuming *arguendo* that Rule 59 is an appropriate avenue for relief in cases where summary judgment has been granted due to a failure by a party to timely respond," "none of the grounds" proffered by Defendants "under Rule 59 have been met" in this case. In addition, the court implied that it had not granted the summary judgment motion simply because it was unopposed, but instead noted that in its original order it had stated that it had "reviewed [Tronson's] argument" and had granted the motion for "good cause" shown.

¶13    Further litigation ensued regarding the amount of attorney fees to be awarded, as well as whether judgment should also be awarded against the fifth borrower who had failed to answer the complaint. Eventually, the court entered final judgment against all five borrowers, including all four Defendants, jointly and severally, in the amount of $124,550.92, which included attorney fees and interest.

ISSUES AND STANDARDS OF REVIEW

¶14    Defendants now appeal from the district court's original summary judgment order as well as from the orders denying their later-filed motions. "We review the district court's grant of

summary judgment for correctness and accord no deference to its conclusions of law." *Gardiner v. Anderson*, 2018 UT App 167, ¶ 14, 436 P.3d 237 (quotation simplified). And we review the court's denial of "post-trial" motions for abuse of discretion. *See Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 940 (Utah 1993) ("[W]e review the [district] court's decision denying [a] motion [for a new trial] only for an abuse of discretion."); *Aghdasi v. Saberin*, 2015 UT App 73, ¶ 4, 347 P.3d 427 ("We review a district court's denial of a rule 60(b) motion for abuse of discretion.").

¶15 Tronson also asks us to award him the attorney fees and costs he has incurred in defending this appeal, and grounds this request in both the Loan Agreement—which allows recovery of attorney fees incurred "in enforcing" the Loan Agreement or the Promissory Note—and in rule 33(a) of the Utah Rules of Appellate Procedure—which authorizes us to award attorney fees if an "appeal taken . . . is either frivolous or for delay," *see* Utah R. App. P. 33(a). "Whether attorney fees are recoverable in an action is a question of law," *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998), and entitlement to attorney fees on appeal is a matter for us to determine in the first instance.

## ANALYSIS

### A

¶16 Defendants first take issue with the district court's original grant of Tronson's unopposed motion for summary judgment. They point out that, under applicable rules and case law, a district court may not grant a summary judgment motion merely because it is unopposed, but instead must undertake a review of the movant's papers to make sure that the movant, despite the lack of opposition, is actually entitled to summary judgment. While Defendants accurately describe the state of the law, their argument is ultimately unavailing, because a court reviewing Tronson's unopposed summary judgment papers would conclude that Tronson is entitled to summary judgment.

¶17 Under our rules of civil procedure, summary judgment may be granted only "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). Even where the nonmovant "fails to properly address [the movant's] assertion of fact," the court may grant a summary judgment motion only "if the motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it." *See id.* R. 56(e)(3). Interpreting a prior version of rule 56,[6] we have held that "summary judgment may not be entered against the nonmoving party merely by virtue of a failure to oppose," but instead a "district court must still determine whether the moving party's pleadings, discovery, and affidavits demonstrate its entitlement to judgment as a matter of law." *Pepperwood Homeowners Ass'n v. Mitchell*, 2015 UT App 137, ¶ 6, 351 P.3d 844; *see also Smith v. Kirkland*, 2017 UT App 16, ¶ 16, 392 P.3d 847 (same).

¶18 But we also held that a nonmovant who fails to oppose a summary judgment motion has thereby failed to preserve any objection to the district court's entry of summary judgment against it, and that, on appeal, any challenge to the district

---

6. The prior version of rule 56 stated that "[s]ummary judgment, if appropriate, shall be entered against a party failing to file a response." *See* Utah R. Civ. P. 56(e) (2015). In *Pepperwood*, we emphasized the "if appropriate" language, interpreting those words as requiring an independent judicial review of unopposed summary judgment papers to confirm that summary judgment really was "appropriate." *See Pepperwood Homeowners Ass'n v. Mitchell*, 2015 UT App 137, ¶ 6, 351 P.3d 844. The current version of rule 56 is, if anything, even clearer in requiring independent judicial review of unopposed summary judgment papers. *See* Utah R. Civ. P. 56(e)(3). In this case, however, neither side argues that the current version of the rule changes the analysis we set forth in *Pepperwood*, and neither side asks us to reconsider *Pepperwood* in any respect.

court's entry of an unopposed summary judgment motion would be reviewed only for plain error.[7] *See Pepperwood*, 2015 UT App 137, ¶ 11. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful. If any one of these requirements is not met, plain error is not established." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (quotation simplified).

¶19 In this case, we are not at all certain that the district court granted Tronson's motion solely because it was unopposed, instead of conducting its own independent review of Tronson's summary judgment paperwork. After all, as the court pointed out in one of its later rulings, its summary judgment order indicated that it had "reviewed [Tronson's] argument" and that it was granting the motion "for good cause shown." But even assuming, for purposes of the argument, that the district court signed Tronson's proposed order simply because the motion was unopposed, and did not so much as glance at Tronson's accompanying paperwork, the court did not commit plain error here, because Tronson's paperwork was complete and his arguments were sound. The third element of plain error is

---

7. In *Pepperwood*, 2015 UT App 137, ¶ 11, we applied plain error analysis without discussing the "ongoing debate about the propriety of civil plain error review." *See Utah Stream Access Coal. v. Orange St. Dev.*, 2017 UT 82, ¶ 14 n.2, 416 P.3d 553 (questioning the applicability of plain error review outside of the criminal context). Our supreme court has taken pains to point out that it has not "endorse[d] the ongoing viability of plain error review in civil cases," nor has it "repudiate[d] it." *Id.* In the meantime, until our supreme court answers this question, Utah appellate courts have sometimes applied plain error review in civil cases in which neither party challenges its application, *see, e.g.*, *Hill v. Estate of Allred*, 2009 UT 28, ¶¶ 30–31, 216 P.3d 929; *Danneman v. Danneman*, 2012 UT App 249, ¶ 10 & n.5, 286 P.3d 309, and we do so here without opining on the propriety of such review.

prejudice: Defendants must demonstrate that the district court's obvious error—again, assuming without deciding that one was committed—actually caused them harm. *See Johnson*, 2017 UT 76, ¶¶ 20–21 (stating that, under plain error analysis, an error is harmful if it was "of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant" (quotation simplified)). And on this record, they cannot do so.

¶20    In support of his motion for summary judgment, Tronson attached sworn affidavits from himself and Nelson, asserting that, on the day after the documents were signed, the two of them had, through their entity (Those Money Guys LLC), paid $25,000 by cashier's check to Those Guys LLC, the entity listed as "Borrower's Firm" in the Loan Agreement. Additionally, Tronson attached copies of the Loan Agreement and Promissory Note, as well as a copy of the stub from the cashier's check itself, and a copy of a bank statement from Those Guys LLC, demonstrating that $25,000 had in fact been deposited into that entity's account on the day the check was delivered. Both Tronson and Nelson averred, in their sworn affidavits, that no repayment had ever been received by either of them.

¶21    Any judge reviewing the unopposed motion and its seven exhibits would have been satisfied that Tronson was entitled to judgment as a matter of law. The infirmity identified in *Pepperwood*—failure to attach the operative document—was not present here, because Tronson attached copies of both the Loan Agreement and the Promissory Note. *See Pepperwood*, 2015 UT App 137, ¶ 10. Those documents were signed by all Defendants, and indicated that Defendants had promised, "for value received," to repay Tronson $25,000 plus interest and fees. The papers also included evidence that the money had actually been paid to borrowers' entity, as well as sworn testimony that it had not been repaid. Even if we assume, arguendo, that the district court neglected to actually look at the paperwork, any such error was harmless here, because the summary judgment motion, and its exhibits, demonstrate the absence of any genuine issue of

material fact, and establish Tronson's entitlement to judgment as a matter of law.

¶22 Defendants resist this conclusion by asserting that, because Tronson (through an entity) made payment to Those Guys LLC rather than to the individual borrowers, Tronson cannot seek recovery from the individual borrowers, because they did not receive the money. But, especially in the context of an unopposed summary judgment motion, this argument falls flat. All five borrowers, including all four Defendants, signed the Promissory Note, indicating that, "for value received," they—and not a business entity—were committing to repay Tronson—and not a business entity—the loaned funds. Tronson asserted, as a factual matter, that the money had been paid to Defendants in the manner Defendants desired, and that the money had not been repaid. Those factual assertions were supported by evidence attached to the summary judgment motion, and were not contested by Defendants. Under these circumstances, the district court was justified in concluding that Defendants were obligated to repay Tronson.

¶23 In sum, the district court did not plainly err by entering summary judgment in this case, even if we assume that the court granted the motion solely because it was unopposed.

B

¶24 Defendants next appeal the district court's denial of their various motions, filed after the court had already granted Tronson summary judgment, in which Defendants asked the court, for various reasons, to reconsider, alter, or amend the summary judgment order. Specifically, Defendants identify three alleged infirmities in the district court's orders. First, Defendants assign error to the court's statement, in its first order on these motions, that "Rule 59 is not the proper procedural vehicle for seeking to set aside" a summary judgment order, because "no trial occurred in this case." Second, Defendants assert that their opposition to Tronson's summary judgment

motion was not, after all, untimely, because they claim that the motion was not validly filed until Elswick filed a formal notice of appearance of counsel in May 2017. And third, Defendants object to the "joint and several" nature of the court's summary judgment order. We address each of these arguments in turn.

1

¶25    As to the first argument, Defendants are correct in assigning error to the district court's statement that rule 59 of the Utah Rules of Civil Procedure is unavailable in civil cases decided on summary judgment. That rule, by its terms, is not limited to instances in which a trial has occurred; indeed, subsection (e) of that rule specifically allows for the filing of motions to alter or amend a judgment. *See* Utah R. Civ. P. 59(e) ("A motion to alter or amend the judgment must be filed no later than 28 days after entry of the judgment."). Moreover, in interpreting rule 59, we have previously determined that "the concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury." *Moon Lake Elec. Ass'n, Inc. v. Ultrasystems W. Constructors, Inc.*, 767 P.2d 125, 127 (Utah Ct. App. 1988) (quotation simplified). Indeed, we concluded that, although neither rule 59 nor rule 56 "directly addresses the availability of a motion for a 'new' trial following summary judgment," such motions are, "nonetheless, procedurally correct." *Id.*; *see also Mojo Syndicate, Inc. v. Fredrickson*, 2013 UT App 6, ¶ 2, 297 P.3d 36 (per curiam) ("[A] rule 59 motion may be used to challenge a summary judgment."). Accordingly, the court's statement that rule 59 is unavailable to seek alteration or amendment of a summary judgment order was incorrect.

¶26    However, the court's error is in this instance harmless, because the court—during Defendants' second round of "post-trial" motions—ended up considering the merits of Defendants' arguments in any event. In the court's order on the second round of motions, it assumed, for the purposes of its analysis, that rule 59 "is an appropriate avenue for relief," and proceeded to

analyze Defendants' arguments. On the merits, however, the court found that Defendants' arguments were infirm, stating that it had "review[ed] all of the various legal and factual arguments presented by Defendants" and that "none of the grounds under Rule 59 have been met to justify a reversal of the original Order." Because the court ultimately did consider the merits of Defendants' arguments, its previous statements about the inapplicability of rule 59 in this context are of little moment.

2

¶27   Defendants now ask us to address the merits of two of the arguments they raised in their rule 59 motions and which were ultimately rejected by the district court. First, they point out that Elswick did not file a formal notice of appearance of counsel until May 2017, *after* the court had already granted Tronson's summary judgment motion, and they assert that all papers filed by Elswick prior to that date were therefore of no force and effect, including the summary judgment motion Elswick signed and filed in April 2017. From this premise, they reason that their opposition memorandum, which was not filed until after the court granted Tronson's motion, was actually timely filed due to the asserted invalidity of the filing of Tronson's motion. We find this argument unpersuasive.

¶28   Applicable rules require that "[e]very pleading, written motion, and other paper . . . be signed by at least one attorney of record." Utah R. Civ. P. 11(a)(1). But our rules—unlike the rules of certain other courts, *see, e.g.*, U.S. Sup. Ct. R. 9—do not specify how one becomes an "attorney of record." Defendants appear to assume, without citation to any rule or other authority, that the only way in which an attorney can become an "attorney of record" is to file a formal notice of appearance of counsel. While we acknowledge that filing a formal notice of appearance is one way for an attorney to become an "attorney of record," we are not persuaded that, under our rules, this is the only way to accomplish the feat.

¶29 In this case, Elswick's name began appearing on documents filed on Tronson's behalf in August 2016, some eight months before the motion for summary judgment was filed. On those documents, most of which he signed, Elswick was listed as "[a]ttorney for Plaintiff Ted W. Tronson." Moreover, the day before he filed the summary judgment motion on Tronson's behalf, Elswick filed a sworn affidavit with the court, stating (among other things) that he was "counsel for the Plaintiff in the above-captioned case." Whatever the requirements might be for becoming an "attorney of record" in a case, we think Elswick clearly met those requirements here, where he had been filing documents for many months listing himself as counsel for Tronson, and where he also filed a sworn affidavit attesting that he was in fact counsel for Tronson.

¶30 Defendants resist this conclusion by pointing to two cases that they assert stand for the proposition that documents not filed by an attorney of record are subject to being stricken. *See In re Discipline of Pendleton*, 2000 UT 77, 11 P.3d 284; *Lancino v. Smith*, 105 P. 914 (Utah 1909). But both of these cases are distinguishable from the issue at hand. In *Lancino*, the attorney of record was out of town, and sent his office mate to court to ask for a continuance. 105 P. at 914–15. However, the pinch-hitting attorney was unable to swear, under oath, that the conditions necessitating the continuance were still in effect, and the court therefore rejected the attorney's efforts as a foundational matter, stating that the original lawyer's affidavit should "have been supplemented by the oath of someone who knew, and stated that the conditions set forth in the affidavit continued the same as they were therein represented to be when it was filed." *Id.* at 915. And in *Pendleton*, our supreme court refused to allow an attorney-litigant, who up to that point had not been proceeding pro se, to file documents over his own signature. 2000 UT 77, ¶ 48. Neither of these cases sheds any light on the current issue: *Lancino* was decided on a foundation issue, not on an "attorney of record" issue, and *Pendleton* concerned the differences—not pertinent here—between a represented party and a pro se litigant.

¶31 Under the circumstances presented here, Elswick had done enough to establish himself as one of Tronson's attorneys of record before filing the summary judgment motion. Accordingly, that motion was validly filed, and Defendants' untimely response really was untimely. The district court did not commit error in so concluding.

3

¶32 Finally, Defendants object to the "joint and several" aspect of the district court's summary judgment order. Under Utah law, "two or more persons who have the same liability on an instrument as makers . . . are jointly and severally liable in the capacity in which they sign." Utah Code Ann. § 70A-3-116(1) (LexisNexis 2009). Defendants contend that the Promissory Note at issue in this case is not an "instrument" for the purposes of this statute, and therefore joint and several liability cannot attach. The district court rejected this argument, and so do we.

¶33 The term "instrument" is defined by statute as "an unconditional promise or order to pay a fixed amount of money" that also meets three other criteria not at issue here. *See id.* § 70A-3-104. Defendants contend that the Promissory Note was not an unconditional promise to pay, and they make two arguments in support of this contention.

¶34 First, Defendants assert that "the Promissory Note was not binding on the Defendants until such time as the Lender made payment, and . . . the Lender was under no obligation to lend money based on the Promissory Note and the Loan Agreement." But while the Loan Agreement itself did not obligate Tronson to loan any money or Defendants to pay any money back,[8] those obligations kicked in once money was

---

8. Along these lines, Defendants also argue that the Loan Agreement and Promissory Note are unconscionable, because Tronson was never actually obligated to lend money to the

(continued…)

actually lent. And the Promissory Note documents a transaction in which money was actually lent, thus triggering Defendants' unconditional repayment obligations. Defendants' first argument is therefore without merit.

¶35    Second, Defendants point out that a document that "is subject to or governed by another writing" is not considered unconditional, *see id.* § 70A-3-106(1); *see also First Fed. Sav. & Loan Ass'n of Salt Lake City v. Gump & Ayers Real Estate, Inc.*, 771 P.2d 1096, 1098 (Utah Ct. App. 1989) ("A promise or order is conditional if the instrument states that it is subject to or governed by any other agreement." (quotation simplified)), and argue therefrom that the Promissory Note is conditional because it refers to and incorporates certain provisions of the Loan Agreement.

¶36    While the Promissory Note does indeed refer to the Loan Agreement, many such references are made in passing, and even Defendants acknowledge that "a mere reference to the Loan Agreement does not, by itself, make the Promissory Note" conditional. At one point, though, the Promissory Note makes more than an in-passing reference to the Loan Agreement, stating that "if any Event of Default (as defined in the Loan Agreement) occurs under the Loan Agreement . . . , then the entire unpaid balance . . . shall . . . at once become due and payable in full." But this reference is not enough to render the Promissory Note conditional, because our legislature has indicated that "[a] promise or order is not made conditional by a reference to another writing for a statement of rights with

_____

(…continued)

borrowers, a fact that Defendants claim renders the documents unenforceable. These arguments are unpersuasive here, because Tronson (through an entity) *did* lend money to Defendants, who indicated in the Promissory Note that their promise to repay the funds was made "for value received." We therefore do not further address Defendants' unconscionability arguments.

respect to . . . acceleration." *See* Utah Code Ann. § 70A-3-106(2) (LexisNexis 2009). The reference in question has to do with "acceleration" of payments, and therefore falls squarely within the statutory exception to conditionality.

¶37 Accordingly, the district court did not err when it rejected Defendants' arguments regarding the unconditional nature of the Promissory Note. That note is an "instrument" under Utah law, and by signing it, Defendants made an unconditional promise to pay Tronson; that promise was not rendered conditional by the note's reference to the Loan Agreement for acceleration terms. Under these circumstances, the district court did not err by entering a judgment that imposed joint and several liability on Defendants.

C

¶38 Finally, Tronson asks us to award him the attorney fees and costs he reasonably incurred in defending this appeal, and asserts two separate grounds for his request. First, Tronson asserts that, as the prevailing party on appeal, he is entitled to recover fees and costs from Defendants pursuant to the language of the Loan Agreement. Second, citing rule 33 of the Utah Rules of Appellate Procedure, Tronson characterizes Defendants' appeal as "not warranted by existing law" and "not based on a good faith argument to extend, modify, or reverse existing law," and asks us to order that Defendants' counsel likewise be jointly and severally liable for payment of those fees and costs. We agree with Tronson that, as the prevailing party on appeal, he is entitled to recover fees from Defendants, but we do not consider Defendants' appeal to have been brought frivolously or in bad faith, and therefore reject Tronson's rule 33 request.

¶39 The Loan Agreement entitles Tronson to recover "all costs, and expenses, including reasonable attorney fees and legal expenses," that he incurs "in enforcing, or exercising any remedies under this Loan Agreement [or] the Promissory Note." Pursuant to this provision, the district court included in its

summary judgment order an award of attorney fees and costs incurred by Tronson in obtaining the judgment. Moreover, in light of the conclusions we reach herein, Tronson is unquestionably the prevailing party in this appeal. It is well-settled that "a provision for payment of attorney fees in a contract includes attorney fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract." *Covey v. Covey*, 2003 UT App 380, ¶ 36, 80 P.3d 553 (quotation simplified). In addition, when "a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Telegraph Tower LLC v. Century Mortg. LLC*, 2016 UT App 102, ¶ 52, 376 P.3d 333 (quotation simplified). Under the circumstances presented here, Tronson is entitled to recover the reasonable attorney fees he incurred on appeal.

¶40    But we do not find Tronson's rule 33 argument as persuasive. That rule provides that, "if the [appellate] court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it shall award just damages . . . to the prevailing party." Utah R. App. P. 33(a). Further, the rule gives us the discretion to "order that the damages be paid by the party or by the party's attorney." *Id.* However, "the imposition of [a rule 33] sanction is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions." *Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. We have previously authorized sanctions only in egregious cases, such as where an appeal was mounted solely for the purpose of harassing the defendant in the context of a hotly contested divorce, *see, e.g.*, *Porco v. Porco*, 752 P.2d 365, 369 (Utah Ct. App. 1988), or where the "appeal is not simply meritless but part of a long-standing pattern of abusive and obstructive conduct," *Ross v. Short*, 2018 UT App 178, ¶ 29, 436 P.3d 318 (quotation simplified). For the reasons described herein, we do not find the positions taken by Defendants on appeal to be persuasive. Nevertheless, we do not consider Defendants' appeal to have been brought frivolously, in bad faith, or merely for purposes of delay. Accordingly, we

decline Tronson's invitation to include Defendants' counsel among those parties liable to reimburse Tronson for the attorney fees and costs he incurred on appeal.

CONCLUSION

¶41    The district court did not commit plain error by granting Tronson's unopposed summary judgment motion, and did not err in denying all of Defendants' "post-trial" motions seeking alteration or amendment of the summary judgment order. Moreover, Tronson is entitled to recover from Defendants (but not from Defendants' counsel), jointly and severally, the reasonable attorney fees and costs he incurred in defending this appeal, and we remand this case to the district court for the purpose of quantifying those fees.

¶42    Affirmed.

_____